# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

## DOCKET NO.: 23-12417

---

EMILY VINCENT,

PLAINTIFF – APPELLANT,

v.

ATI HOLDINGS LLC, et al,

DEFENDANT – APPELLEE.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA DISTRICT COURT CIVIL ACTION NO.: 2:21-CV-00514-ACA

---

## BRIEF OF APPELLANT

---

COUNSEL FOR APPELLANT:

Cynthia Wilkinson
Wilkinson Law Firm PC
1717 3rd Avenue North, Suite A
Birmingham, AL 35203
Telephone: (205) 250-7866
cwilkinson@wilkinsonfirm.net

Richard Bearden
Massey, Stotser & Nichols, PC
1780 Gadsden Highway
Birmingham, AL 35235
Telephone: (205) 838-9000
rbearden@msnatorneys.com

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel of record for the Appellant hereby certifies the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, corporations (including subsidiaries, conglomerates, affiliates, parent corporations and any publicly held corporation which owns 10% or more of the party's stock), and other identifiable legal entities related to a party that has an interest in this case.

1. Janell M. Ahnert, Counsel for Defendant-Appellee ATI Holdings LLC

2. The Honorable Annemarie Carney Axon, United States District Judge

3. Richard A. Bearden, Counsel for Plaintiff-Appellant

4. Bishop Colvin Johnson & Kent, LLP

5. Boardman, Carr, Petelos, Watkins & Ogle, P.C.

6. Mark S. Boardman, Counsel for Defendants Sam Shade and Michael Turner

7. Clay R. Carr, Counsel for Defendants Sam Shade and Michael Turner

8. Carl E. Johnson, Jr., Counsel for Defendant Jefferson County Board of Education

9. Littler Mendelson, PC

10. Massey Stotser & Nichols, PC

11. Patrick Drake Schach, Counsel for Defendant-Appellee ATI Holdings

LLC

12.    Samantha K. Smith, Counsel for Defendant Jefferson County Board of Education

13.    Katherine H. Watkins, Counsel for Defendants Sam Shade and Michael Turner

14.    Cynthia Forman Wilkinson, Counsel for Plaintiff-Appellant

15.    Emily Vincent, Plaintiff-Appellant

16.    Wilkinson Law Firm, P.C., Counsel for Plaintiff-Appellant

/s/ Cynthia Wilkinson
Cynthia Wilkinson
*Attorney for Appellant*

**OF COUNSEL**:

Cynthia Wilkinson
1717 3rd Avenue North, Suite A
Birmingham, AL 35203
cwilkinson@wilkinsonfirm.net

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. This case presents the Circuit with important issues concerning the proper application of causation in Title VII "motivating factor" cases at the summary judgment stage.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS …………………………………..i

STATEMENT REGARDING ORAL ARGUMENT……………………………..iv

TABLE OF CONTENTS…………………………………………………………..v

TABLE OF AUTHORITIES……………………………………………………..vi

STATEMENT OF JURISDICTION………………………………………………1

STATEMENT OF THE ISSUES…………………………………………………2

STATEMENT OF THE CASE……………………………………………………3

Course of the proceedings and Disposition Below……………………………..3

Statement of the Facts…………………………………………………………4

STANDARD OF REVIEW……………………………………………………..11

SUMMARY OF THE ARGUMENT…………………………………………...11

ARGUMENT…………………………………………………………………...12

CONCLUSION…………………………………………………………………40

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)…………..60

CERTIFICATE OF SERVICE  …………………………………………………61

# TABLE OF AUTHORITIES

**Cases**

*Bailey v. Metro Ambulance Servs.*, 992 F.3d 1265 (11th Cir. 2021)……….15, 17

*Bostock v. Clayton County, GA*, __ U.S. __, 140 S.Ct. 1731 (2020)……….41, 42

*Calvert v. Doe*, 648 F. App'x 925 (11th Cir. 2016)……………………..15, 27, 28

*CBOCS W., Inc. v. Humphries*, 533 U.S. 442 (2008)…………………………..13

*Chapman v. Al. Transp.*, 229 F.3d 1012 (11th Cir. 2000)………………………41

*Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249 (11th Cir. 2012)…………18

*Donnellon v. Fruehauf-Corp.*, 794 F.2d 598 (11th Cir. 1986)………………….29

*Fonte v. Lee Mem'l Health Sys.*, 2021 U.S. App. LEXIS 34256……………… 15

*Hamrick v. Am. Cas. Co.*, 245 F. App'x 891 (11th Cir. 2007)…………………43

*Jones v. Gulf Coast Health Care of Del.*, 854 F.3d 1261 (11th Cir. 2017)…….30

*Lewis v. City of Union City, GA, (Lewis I)*, 918 F.3d 1213 (11th Cir. 2019)…..25

*Lewis v. City of Union City, GA, (Lewis II)* 934 F.3d 1169 (11th Cir. 2019)…..26

*Long v. Ala. Dep't of Human Res.*, 650 F. App'x 957 (11th Cir. 2016)………..13

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)……………………..13

*Munoz v. Selig Enters.*, 981 F.3d 1265 (11th Cir. 2020)……………30, 33, 36, 37

*Patterson v. Georgia Pac., LLC*, 38 F.4th 1336 (11th Cir. 2022)………….29, 30

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000)…………………..43

*Silverman v. Bd. of Educ.*, 637 F.3d 729 (7th Cir. 2011)………………18, 22, 27

*Sims v. MVM, Inc.*, 704 F.3d 1327 (11th Cir. 2013)…………………………..16

*Smith v. City of New Smyrna Beach*, 588 F. App'x 965 (11th Cir. 2014)….18, 21

*Smith v. Lockheed-Martin Corp*, 644 F.3d 1321 (11th Cir. 2011)…13, 14, 15, 16

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)………………33, 44

*Univ. of Tex. SW Med. Cntr. v. Nassar*, 570 U.S. 338 (2013)………………13, 41

**Statutes**

28 U.S.C. § 1291……………………………………………………………………1

28 U.S.C. §§1331……………………………………………………………………...1

42 U.S.C. § 1331……………………………………………………………………1

42 U.S.C. § 1367……………………………………………………………………1

42 U.S.C. § 1981……………………………………………………………..1, 12

42 U.S.C. 2000e-3(a)………………………………………………………1, 12, 16

**Rules**

Eleventh Circuit Rule 26.1-1…………………………………………………………i

Fed. R. App. P. 32…………………………………………………………………I

Fed. R. App. P. 4(a)(1)……………………………………………………………1

Fed. R. Civ. P. 56…………………………………………………………38

Fed. R. Civ. P. 59…………………………………………………………3
**Other Authorities**

11th Cir. P.J.I. 4.22 ...................................................................................37

## STATEMENT OF JURISDICTION

Emily Vincent ("Vincent") filed suit against her employer alleging violations of Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e, et seq. (Title VII) and state law tort claims. (Docs.1and 7). Subject matter jurisdiction was based on 28 U.S.C. §§1331, 1343, 1367 and 42 U.S.C. §2000e-5(f)(3). (Docs. 1 and 7). Vincent's appeal is timely under Fed. R. App. P. 4(a)(1). Appellate jurisdiction exists under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

1.      Did the district court, in granting summary judgment to Appellee, misapply the motivating factor standard applicable to Appellant's Title VII sex discrimination claim?

2.      Did the district court misapply the summary judgment standard in ruling on Appellant's Title VII sex discrimination claim?

3.      Did the district court err by advancing arguments not made by Appellee in its motion for summary judgment and then granting summary judgment based upon those arguments?

## <u>STANDARDS OF REVIEW</u>

This Circuit Court reviews a district court's grant of summary judgment *de novo*, viewing the record and drawing all reasonable inferences in the light most favorable to the non-moving party. *Martin v. Brevard County Public Schools*, 543 F.3d 1261, 1265 (11th Cir. 2008). All reasonable doubts about the facts must be resolved in favor of the non-movant. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1327 n. 23 (11th Cir. 2011).

This Circuit reviews a district court's legal conclusions and application of the law to the facts *de novo*. *Gomez v. Fuenmayor*, 812 F.3d 1005, 1008 (11th Cir. 2016). It is an abuse of discretion for the district court to misapply the law. *Mincey v. Head*, 206 F.3d 1106, 1137 n. 69 (11th Cir. 2000).

## STATEMENT OF THE CASE

### COURSE OF THE PROCEEDINGS AND DISPOSITION BELOW

Appellant-Plaintiff, Emily Vincent ("Vincent") filed suit against Appellee-Defendant ATI Holdings, LLC ("ATI"), and Defendant Jefferson County Board of Education, alleging discrimination because of her gender and retaliation in violation of her rights under Title VII of the Civil Rights of 1964, alleging violations of Title IX, and asserting various state law claims. (Doc. 1). Vincent filed an Amended Complaint. (Doc. 7). ATI filed a Motion to Dismiss Vincent's Amended Complaint. (Doc. 13). JCBOE also filed a Motion to Dismiss Vincent's Amended Complaint. (Doc. 16). The District Court granted JCBOE's Motion to Dismiss in part and dismissed Vincent's Title IX claims and denied ATI's Motion to Dismiss in its entirety. (Doc. 35). JCBOE answered Vincent's Amended Complaint. (Doc. 37). ATI answered Vincent's Amended Complaint. (Doc. 37). After the close of discovery, JCBOE and ATI moved for summary judgment on all counts, filing a memorandum of support and evidence. (Docs. 49-54). A Joint Stipulation of Dismissal was filed by JCBOE and Vincent dismissing JCBOE with prejudice, (Doc. 55). Vincent opposed ATI's Motion for Summary Judgment. (Docs. 65-66). On June 22, 2023, the District Court granted summary judgment on all counts and required the parties to submit a response to the Court's order regarding diversity jurisdiction over the remaining state law claims. (Docs. 78-79). Vincent filed her response

regarding diversity jurisdiction over the remaining state law claims. (Doc. 80). On July 7, 2023, the District Court entered a Final Order dismissing Ms. Vincent's state law claims without prejudice. (Doc. 81). In granting ATI's Motion for Summary Judgment and dismissing the remaining state law claims, the District Court entered judgment as to all claims asserted by all parties. This appeal followed. (Doc. 83).

## STATEMENT OF DISPUTED AND UNDISPUTED FACTS

Emily Vincent, ("Vincent") began working as an athletic trainer for ATI in 2017, and was assigned to work at Pinson Valley High School, ("PVHS"), where she remained employed for three years. (Doc. 54-3:20:18-23; 138:8-139:15). Vincent was a good employee and ATI never reprimanded her, put her on any growth plan, and never gave her a bad performance evaluation. (Doc. 54-3:253:19-254:2; 285:9-20; Doc. 50-1: 285:13-20; 340:22-13).

On February 27, 2020, PVHS hired Sam Shade, male, as the Head Football Coach and Athletic Director. (Doc. 50-2:269:8-270:3). From March 2020 until May 2020, coaches and student athletes were restricted from being on the PVHS campus due to the Covid-19 pandemic. On May 27, 2020, Turner, asked Vincent to be the Assistant Athletic Director ("AAD") at PVHS, and thereafter Vincent began performing the additional duties of the AAD, including drafting Covid-19 protocols for all PVHS student athletes. (Doc. 54-3:319:2-4; 321:19-322:18; 324:7-11; 332:8-333:14; 343:21-344:15; 349:22-352:15; 360:9-12; 367:7-16).

On May 31, 2020, Shade scheduled a meeting with the football coaches and Vincent attended the meeting in her capacity as the AAD. (Doc.50-2:273:16-22; Doc. 54-3:88:19-87:8; 98:22-99:20). On June 3, 2020, Turner called Vincent in his office and stated, "This is kind of awkward," then asked her to stop doing AAD duties and return to performing only athletic training duties. (Doc. 54-3:79:9-80:8).

After being removed from the AAD position by Turner, Vincent saw Kenneth Sheppard, male football coach, and let him know what had happened. Sheppard responded stating that made sense because Shade said he was uncomfortable working with a woman and did not want a woman working with his football team. (Doc. 54-3:74:21-76:22). Shepheard later sent Vincent a text message after she was removed from PVHS saying, "So all this because they wanted a man." (Doc. 54-3:328:13-19; Doc. 65-1, p. 3).

Vincent complained of gender discrimination and reported the discriminatory comments to Pequette, ATI Senior Director. (Doc. 54-3, 230:7-231:2; Doc. 54-12:25, 91:9-19). Pequette responded stating, it was "he said, she said" and Vincent could not prove it. (Doc. 54-3:230:19-231:2; 231:16-18; 253:13-17). ATI then removed Vincent as athletic trainer at PVHS and replaced her with a male athletic trainer. (Doc. 54-3:328:7-16; 342:9-21; Doc. 50-7:84:9-14).

On June 5, 2020, Paquette emailed Turner stating, "I understand that we have some issues with Emily and may need to move on. Hoping to discuss." (Doc. 65-14,

p. 12). Pequette asked Turner to provide documentation regarding any issues with Vincent. (Doc. 65-14, p. 12). Pequette admits Vincent complained to him about gender discrimination before she was removed from PVHS on June 5, 2020. (Doc. 54-12:91:9-19).

After emailing Turner, Paquette emailed ATI Senior HR Business Partner, Laura Erickson ("Erickson"), regarding the removal of Vincent from PVHS stating Turner would document the request with "valid reasoning." (Doc. 65-27, p. 2). In addition, Paquette informed Erickson he would let Vincent know, "we obviously need to look into/investigate the issue and we will be in touch." (Doc. 65-27).

On the afternoon of June 5, 2020, Shade came to Vincent's office with two other male coaches and informed her that she needed to leave her keys when she left for the day. (Doc. 50-2:193:14-22; 273:13-15; Doc. 54-3:213:10-19:230:7-17:252:6-21:370:5-23).

When Turner failed to provide any documentation regarding Vincent's removal from PVHS, Pequette emailed him on June 8, 2020, again asking Turner to provide documentation regarding Vincent, "Hoping to get that documentation from you regarding Emily this morning if possible." (Doc. 65-14, p. 12). After receiving Pequette's June 8, 2020, email, Turner finally emailed Pequette a memo regarding alleged issues with Vincent. (Doc. 65-31, pp. 3-4; Doc. 65-23, p. 2).  Despite Pequette's request that Turner provide specifics, "Please be as specific as you can."

(Doc. 54-12:105:10-22:109:4-15), Turner provided only general statements, failing to provide any specifics regarding any alleged issues with Vincent. (Doc. 65-23, p. 2; Doc. 54-12:103:12-105:2:106:8-19:121:4-22). As conceded by Turner, if there had been issues serious enough to have an ATI employee removed from PVHS it would have been documented. (Doc. 50-4:132:19-133:3; Doc. 50-11:108:15-21; 128:9-129:11).

In fact, in March 2020, Turner asked Vincent to document serious issues with male ATI athletic trainer Heath Blackmon, (Doc. 65-12), and on March 18, 2020, Turner emailed Pequette requesting Blackmon be removed from PVHS, attaching Vincent's documentation, stating Blackmon "put some student athletes at risk for injury due to his inability to do his job with absolute fidelity." (Doc 65-14, p. 13; Doc. 65-12; Doc. 65-11, p. 2; Doc. 54-12:60:2-14). Blackmon failed to bring the defibrillator (a lifesaving device he was required to have at practice under the emergency protocols) to athlete training. (Doc. 54-9:69:13-71:14; Doc. 54-12:63:13-64:23). Blackmon was removed from PVHS, but his pay did not change when he was assigned to another school. (Doc. 54-9:81:7-8).

As it relates to Vincent's removal from PVHS, Erickson emailed Pequette asking what Turner's concerns were and if this was the first ATI heard of any issues or whether there were ongoing issues. (Doc. 65-26, p. 3). Pequette responded claiming the issues with Vincent were "ongoing" but, when placed under oath in his

deposition, Pequette admitted he was not aware of anybody from PVHS reporting any ongoing issues with Vincent. (Doc. 54-12:128:9-129:11; Doc. 65-26, p. 2). Pequette is not aware of any documents to support any of the alleged issues included in Turner's June 8, 2020, memo regarding Vincent and Turner's memo was the first and only documentation from PVHS regarding Vincent. (Doc. 54-12:103:8-19:108:15-21).

Pequette never spoke with Bush, Vincent's immediate supervisor, about any alleged issues with Vincent or Turner's June 8, 2020, memo. (Doc. 54-12:49:17-22:55:6-12:110:18-111:5). Pequette also never questioned Vincent about these alleged issues, never provided her with a copy of Turner's June 8, 2020, memo or informed her of any of these alleged issues despite Vincent requesting this information numerous times. (Doc. 54-12:54:13-18; 118:6-22; 119:2-119:5; 120:4-10; 204:5-206:5; Doc. 65-35, p. 9; Doc. 73-3, p. 12, 16-18). Pequette is not aware of ATI providing Vincent with any specific information as to why Turner claimed he wanted her removed. (Doc. 54-12:206:2-5).

On June 8, 2020, after Pequette forwarded Turner's memo to Erickson, she asked Pequette, "Do you have the additional documentation we discussed surrounding previous issues reported to you or your supervisors?" (Doc. 65-31, p. 3). Erickson instructed Pequette that they needed to get both sides of the story but when Pequette and Erickson had a conference call with Vincent, they failed to

provide her information and get her side of the story, even after Vincent asked them repeatedly what issues there were with her performance causing her removal from PVHS. (Doc. 54-12:55:21-56:3; Doc. 73-3, p. 12, 16-18).

Following her removal from PVHS, ATI offered Vincent two athletic trainer positions, one with 19 % pay cut and the other that required driving an hour and a half one way to work covering two high schools. (Doc. 54-3:243:13-244:3; 254:3-14; Doc. 65-35, p. 4-6; Doc. 50-18, p. 3). Through conversations between Vincent and her immediate supervisor, Bush, Vincent learned about two high school positions in the Birmingham area, including Chelsea high school, and a middle school position. (Doc. 54-3:248:14-249:22). When Vincent asked Pequette and HR about the available position at Chelsea high school, they would not even talk about this position as a possible transfer. (Doc. 54-3:250:5-19).

There were several other positions available as of June 3, 2020, including Mountain Brook High School, Clay Chalkville High School, Jasper High School, and Pike Liberal Arts, as well as a position at Homewood Middle School for an outreach athletic trainer, but none of these positions were offered to Vincent. (Doc. 65-34, p. 2; Doc. 54-12:187:12-188:7; 191:13-193:21; 194:4-20; 198:13-19; 199:2-199:11).

On June 15, 2020, at 4:34 pm, Vincent emailed Erickson and Pequette letting them know she was "reluctantly" accepting the Pelham Middle School position that

she was being "forced" to accept in order to keep her job. She also complained that this was "retaliation for her complaints of gender discrimination" and "further gender discrimination." (Doc. 65-35, p. 2). Pequette understanding Vincent was complaining about further gender discrimination and retaliation but did nothing in response. (Doc. 54-12:202:1-203:8; 203:2-204:1; 204:6-17).

Erickson and Pequette spoke to Vincent the next day, June 16, 2020, after receiving her complaints that she was being discriminated against because of her gender and retaliated against. (Doc. 65-36; Doc. 73-3). Erickson made it clear in her call with Vincent that, "they [PVHS] do not make decisions for us here at ATI…" and "our decision separate from the school. (Doc. 73-3, p. 5). However, when required to respond to Vincent's EEOC charge, ATI represented to the EEOC "[t]he Company's involvement here is extremely limited." (Doc. 50-18, p. 3).

At no point in this conversation did Erickson or Pequette ask Vincent anything about her discrimination and retaliation complaints. (Doc. 73-3). Erickson's only response to Vincent's complaints was to let Vincent know that her email was "a little concerning" and "it doesn't make any sense for you to be miserable or to be angry and upset about decisions that are made that will do nothing to - - nothing but bring some type of **toxicity** to our future situations and, you know, relationship with you." (Doc. 73-3, p. 9). (emphases added).

In the call with Vincent, Pequette responded to Vincent's complaint email

stating, "[a]nd then when you respond with an e-mail that is saying you want to move forward, but, yes, with a little bit, you know, negative or inhibitive or whatever word we want to put it to, you used a lot of words in that response…" and then Erickson spoke of a "better foot moving forward without animosity from us to you or you back to us…" (Doc. 73-3, p. 14).

Erickson began the conversation by telling Vincent, "As you're aware, there have been some issues or things that have occurred over the years during your time at the school where there's been comments made about other staff members or towards other staff members and also, you know, more recently things where you were asserting authority where it was not necessarily your place to do so." (Doc. 73-3, p. 4). Vincent repeatedly informed Erickson and Pequette that she had not been made aware of any of these issues. (Doc. 73-3, p. 4-5, 9-11). In response, Erickson repeatedly lied to Vincent claiming there entries in Dayforce regarding these issues, "[t]here's some [Day Force] entries" and "there are pieces in [Day Force] that - - I know of at least of one occurrence that was entered in." (Doc. 73-3, p. 5-6).

Erickson knew there were no entries in Dayforce because she searched and found none. (Doc. 65-24, p. 2). Erickson then emailed Bush, Vincent's supervisor, on June 16, 2020, at 7:27 am after Vincent's June 15, 2020, email complaining of discrimination and retaliation, asking, "Jason indicated that you may have sone Dayforce entries regarding Emily and when I search I do not see any. Are you able

to send over screenshots of what you have entered? Also any emails regarding performance concerns with her." (Doc. 65-24, p. 2). Bush responded that same day at 8:44 am, "Only complaint I had on her was from another AT [athletic trainer] and it was later found to be miscommunication and she did no wrong." (Doc. 65-24, p. 3).

Bush testified there were no Dayforce entries regarding Vincent and had there been any issues he would have documented it in Dayforce.  (Doc. 54-9:103:14-104:7). Bush also did not have any emails documenting any performance issues with Vincent. (Doc. 54-9:104:8-20).

Erickson acknowledged that the pay differential between Vincent's current pay and the position at Pelham Middle school was going to be a "big hit." (Doc. 73-3, p. 18). Then explained to Vincent that her option was to the middle school position and "[i]n the event that you decide no, that's not what you want, that severance package is a continuation of pay of two weeks and then you would be eligible to apply for unemployment. That's an option as well." (Doc. 73-3, p. 20).

Erickson emailed Pequette the next day, June 16, 2020, at 11:43 am, dismissing Vincent's complaints without conducting any investigation. (Doc. 65-36, p. 2; Doc. 54-12: 207:5-208:7). ATI never investigated Vincent's June 15, 2020, complaints, and instead allowed Erickson and Pequette --the very people Vincent

complained to and about-- to dismiss her complaints while moving her to a lesser paying and less desirable position. (Doc. 54-12:203:21-204:1).

Pequette inquired to Erickson about the possibility of terminating Vincent, but Erickson determined there was not enough documentation to support termination. (Doc. 65-23, p. 2). Erickson and Pequette later tried to get Vincent to accept a severance package and leave. (Doc. 73-3, p. 16, 20).

After Vincent accepted the Pelham Middle School position, ATI required her to work at the Middle School Monday through Thursday, attend Monday and Tuesday football practices, attend all home and away football games on Thursdays, work at the high school on Wednesday afternoons, attend all Friday night home and away football games, and, in the Spring, be at the high school to assist with coverage for all sports. (Doc. 54-3:267:19; 271:17-272:9; 274:1-22; Doc. 65-35, p. 2). After complaining she was being discriminated against and retaliated against, ATI made the decision to move forward with the decrease in Vincent's pay while requiring her to cover two schools. (Doc. 54-3:267:20-23; 270:21-271:5; 286:11-20).

When asked if ATI had an obligation to determine whether or not PVHS wanted Vincent gone because of her gender and if their vague allegations about Vincent were true, Pequette testified, "the school said they did not want her to return, and we have to comply to it regardless of the reason." (Doc. 54-12:108:3-14). Pequette testified, "it doesn't matter what the reason, so if they say this athletic

trainer cannot return and we have to comply." (Doc. 54-12:74:18-75:12). However, when asked what he would say to Turner if Turner stated he did not want any Black trainers at his school, Pequette testified, "I would tell them that that's not how ATI operates and that [we] want to put the most qualified athletic trainer in any position." (Doc. 54-12:73:1-9).

## SUMMARY OF THE ARGUMENT

## ARGUMENT

### ATI was Vincent's Employer and Acquiesced to PVHS's Discriminatory Request to Remove Vincent

ATI was Vincent's employer for Title VII purposes and had control over Vincent's employment and the decision to remove her from PVHS. Erickson made it clear in her call with Vincent that, "they [PVHS] do not make decisions for us here at ATI…" and "our decision separate from the school." (Doc. 73-3, p. 5). ATI attempts to justify its discriminatory acquiescence of PVHS's conduct by arguing that in ATI's contract with PVHS, PVHS had the right to demand Vincent be removed from the school and that honoring PVHS's request is a legitimate nondiscriminatory reason for an employment action. However, it is not a legitimate nondiscriminatory reason when ATI ratified and condoned gender discrimination.

The relevant EEOC Enforcement Guide concludes as follows:

The fact that a staffing firm's discriminatory assignment practice is based on its client's requirement is no defense. Thus, a staffing firm is liable if it honors a

client's discriminatory assignment request or if it knows that its client has rejected workers in a protected class for discriminatory reasons and for that reason refuses to assign individuals in that protected class to that client. Furthermore, the staffing firm is liable if it administers on behalf of its client a test or other selection requirement that has an adverse impact on a protected class and is not job-related for the position in question and consistent with business necessity. 42 U.S.C. § 2000e-2(k).

ATI's reliance on its contract with PVHS does not relieve it of liability. Manpower's argument that *contractually* it had "no choice but to comply" with Freescale's demand that Burton's assignment be terminated does not alter this analysis. First, a purported contractual obligation to fire an employee on a discriminatory basis is no defense. As an employer, Manpower had an independent obligation to comply with the ADA, and a contractual obligation to discriminate would be unenforceable. *See Panasonic Co., Div. of Matsushita Elec. Corp. of Am. v. Zinn,* 903 F.2d 1039, 1041 (5th Cir.1990). Second, under the contract, Manpower expressly agreed to follow all federal laws, "to comply with the Americans with Disabilities Act," and to ensure "workers assigned to perform services at Freescale are not deprived of any rights provided for under the ADA." This obligation to follow the law surely qualifies any obligation to end assignments at the will of the client. *In re Velazquez,* 660 F.3d 893, 897 (5th Cir.2011) ("When interpreting a

16

contract, a court 'should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'" (quoting *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983))).

ATI is correct in that it cannot force its client, PVHS, to obey the law, but ATI was required to protect Vincent from illegal discrimination. ATI knew as of the day Vincent was removed from PVHS, that Vincent reported Shade did not want a woman working with his football team and she believed she was being discriminated against. ATI did nothing to investigate Vincent's complaints. ATI also knew when it removed Vincent from PVHS that she was a good employee that had been at PVHS for three years with no record of any disciplinary action. Vincent's supervisor, Bush, hated to lose her at PVHS because she was such a good employee.

"An employer may be liable for discriminatory conduct, including retaliation, by non-employees 'where the employer either ratifies or acquiesces in the [conduct] by not taking immediate and/or corrective actions when it knew or should have known of the conduct.'" (quoting *Freitag v.Ayers,* 468 F.3d 528, 538 (9th Cir. 2006); *Sterrett v. Sierra Sw. Coop Servs., Inc.,* 2011 U.S. Dist. LEXIS 100581, 2011 WL 3924861, at *14 (D. Ariz. Sept. 7, 2011)

### VINCENT IS ENTITLED TO A JURY TRIAL ON HER TITLE VII GENDER DISCRIMINATION CLAIMS

ATI discriminated against Vincent because of her gender when it removed

her from her athletic trainer position at PVHS and by forcing her to transfer to an inferior position. ATI argued in its motion for summary judgment that in order for Vincent to survive summary judgment on her Title VII gender discrimination claim she had to satisfy the stringent framework established by *McDonnel Douglas, Co. v. Green, 441 U.S. 792 (1973),* and *Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).* Under that standard the plaintiff must not only establish a *prima facie* case of sex discrimination but must also demonstrate that each of the reasons advanced by the employer to justify the termination were pretext and not actually the motivation for the discharge.

While *McDonnell Douglas* may be the most utilized analytical framework, it is not always the most appropriate and plaintiff is not limited to its use. In response to summary judgment, Vincent chose to argue her plead theory of mixed motive. Vincent has also satisfied the *McDonnell Douglas* framework and established a *prima facie* case of gender discrimination.

### ATI'S REMOVAL OF VINCENT FROM PVHS IS GENDER DISCRIMINATION

To establish her prima facie case of gender discrimination, Vincent must show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified to perform her job; and (4) she was replaced by a male. *See Lewis v. City of Union City, Ga., 918 F.3d 1214, at 1220-21 (11th Cir. 2019).* ATI conceded the first three elements and only argued Vincent

could not establish a *prima facie* case of gender discrimination because it is undisputed that Taylor Cole, a female, replaced Vincent at PVHS.[1] (Doc. 56, p. 23). However, the evidence before the district court established that Vincent was replaced by a male, Alex Gee.

Dave Bush, ATI Sports Medicine Manager for Alabama, testified that on June 7, 2020, two days after Vincent is removed from PVHS, he spoke with Shade and let him know he [Bush] would have a new athletic trainer taking care of him [Shade] the next morning. (Doc. 54-9:50:11-18). The new athletic trainer at PVHS was Alex Gee (a male), and he was taking over Vincent's duties. (Doc. 54-9:50:19-51:1). PVHS football coaches Brazzell, Lee and Sheppard, also confirmed that Alex Gee replaced Vincent. (Doc. 50-8:33:11-13; Doc. 50-9:42:3-6; Doc. 50-7:84:9-14). Vincent has established a *prima facie* case of gender discrimination with regard to her removal from PVHS.

## ATI's Proffered Reasons for Vincent's Removal are Pretext for Discrimination

"The establishment of a prima facie case creates a presumption that the employer discriminated against the plaintiff." *Flowers v. Troup Cty., Ga., Sch.*

---

[1] Defendant conceded Vincent suffered an adverse employment action under a *McDonnel Douglas* analysis but changed its position in its reply brief when arguing mixed motive. The district court determined an adverse action under the *McDonnel Douglas* framework is also an adverse action under the mixed-motive theory. (Doc. 78, p. 25).

*Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015). ATI argues that it had legitimate nondiscriminatory reasons for removing Vincent from PVHS, that its contract with PVHS allowed PVHS to demand the removal of Vincent and honoring a client's staffing request is a nondiscriminatory legitimate reason. ATI also contends that Turner reported to Pequette that he did not want Vincent performing athletic trainer duties at PVHS because Vincent (1) had interpersonal issues with PVHS's staff and (2) was acting in areas outside her authority.

PVHS had no issues with Vincent's performance until it hired the new male football coach and athletic director, Sam Shade. Prior to Shade, Vincent was considered an exemplary employee by ATI and PVHS. In fact, in March 2020, Vincent was such a valuable employee that Turner relied on her to gather documentation and evidence regarding serious issues with male athletic trainer Heath Blackmon, who was engaging in practices that could endanger student athletes. (Doc. 65-12; Doc. 65-11).

On May 27, 2020, Turner placed Vincent in the position of AAD, significantly expanding her duties, so that she could assist Shade, and Vincent immediately began performing the duties of the AAD and working to create Covid-19 protocols for safe return of all PVHS athletes. (Doc. 54-3:319:2-14; 321:19-322:18; 324:7-11; 330:13-331:23; 343:21-344:21; 349:22-352:15; 360:9-12; 367:7-16; Doc. 65-39). On

Sunday, May 31, 2020, Vincent attended a meeting for all coaches scheduled by Shade and introduced herself as the AAD. (Doc.50-2:273:16-22).

By Wednesday, June 3, 2020, Turner removed Vincent as the AAD, informing her that she was no longer the AAD and was still an athletic trainer at PVHS, (Doc. 54-3:79:9-80-8; 344:8-21). Two days later, on June 5, 2020, Shade came to Vincent's office, with two other male coaches, and told Vincent to leave her keys when she left for the day. (Doc. 54-3:230:7-17; 252:6-21; 370:5-23). As of June 5, 2020, there was no documentation regarding any alleged issues with Vincent and there were no complaints about her performance.

Vincent complained to Pequette sometime between June 3, 2020, and June 5, 2020, about being informed that Shade did not want a woman working with his football team and Shade's removal of her on June 5, 2020. (Doc. 54-3:296:6-20; 229:17-230:18). Paquette admits Vincent complained to him about gender discrimination before she was removed from PVHS. (Doc. 54-12: 76:17-77:13; 91:9-19). Paquette responded to Vincent telling her it was "he said, she said" and that Vincent could not prove it. (Doc. 54-3:230:19-231:2; 231:16-18: 253:13-17).

ATI relies on PVHS for its proffered nondiscriminatory reasons for removing Vincent, but there is no evidence to support the removal of Vincent from PVHS. ATI knew there was no documentation showing any issues with Vincent before removing her from PVHS on June 5, 2020. There were no entries in Dayforce

regarding any issues or complaints with Vincent. (Doc. 65-24, p. 2). Bush testified there were no Dayforce entries regarding Vincent and had there been any issues he would have documented it in Dayforce.  (Doc. 54-9:103:14-104:7). Bush also did not have any emails documenting any performance issues with Vincent. (Doc. 54-9:104:8-20).

However, Pequette in acquiescing and ratifying PVHS's discrimination in the removal of Vincent, emailed HR falsely claiming, "[w]e have removed two different ATs from Pinson Valley because she could not get along with them or claimed they were not competent ATs. We have had issues with her drama and constant complaints and accusations internally with school employees." (Doc. 65-31). None of Pequette's allegations are true. Pequette admitted in his deposition that the only "complaints" were those Vincent made against male athletic trainers Woodward and Blackmon, who ATI removed for documented performance problems *and not* because Vincent could not get along with them. (Doc. 54-12, pp. 35-36; 42-45; Doc. 65-28, p. 3; Doc. 65-29; Doc 65-14, p. 13; Doc. 65-12; Doc. 54-12:60:2-14). Pequette claims that Vincent's reporting of issues with Woodard and Blackmon constituted "drama" are false because he admits she had duty to report these issues. (Doc. 54-12, p. 43).

ATI's proffered reasons for Vincent's removal from PVHS are false and are pretext for gender discrimination.  ATI could have returned Vincent to PVHS, but

ATI had a different standard regarding its prevention of race discrimination versus any prevention of gender discrimination. If Turner stated he did not want any black athletic trainers at his school Paquette would "[t]ell them that that's not how ATI operates and that [we] want to put the most qualified athletic trainer in any position." (Doc. 54-12:73:1-9, 76:7-16). Paquette also believes it would not be right for Turner to say he did not want any black athletic trainers and understands discrimination is illegal, including discriminating against a woman because of her gender. (Doc. 54-12:73:10-74:3; 76:17-77:13).

However, when Vincent complained to Paquette that Shade did not want a woman working with his football team, even though Paquette knew this could be gender discrimination, he did nothing. (Doc. 54:12:76:17-79:16). While Paquette was very clear as to how he would respond if Turner said he did not want any black athletic trainers, when asked about Shade saying he did not want a woman working with his football team Paquette testified, "[H]e can make that statement, right, but from ATI's standpoint, it's just - - it goes back to the fact that they say- -it doesn't matter what the reason, so if they say this athletic trainer cannot return and we have to comply." (Doc. 54-12:74:18-75:12). "Whenever any of affiliates say they don't want an athletic trainer to return we've got to comply." (Doc 54-12:66:15-20).

ATI has another shifting reason for Vincent's removal. When Pequette was asked in his deposition what he did to protect Vincent from discrimination he

testified that ATI moved her from PVHS and transferred her elsewhere. (Doc. 54-12. P. 23-24). Vincent argues that this reason is discriminatory. Title VII guarantees an employee will have a job free of discrimination. The solution to resolve gender discrimination in the workplace if a man does not want to work with a woman is never to remove the woman, but to remove the man that won't work with a woman. ATI did not want to upset its customer, PVHS, so it went along with the discrimination. ATI acquiesced to PVHS's discriminatory request to have Vincent removed from the school and even gave Shade what he wanted -- a male athletic trainer, Alex Gee-- because Shade did not want a woman working with his football team. ATI's articulated reasons for removing Vincent are simply pretext to conceal its true motivation, gender discrimination.

## ATI DISCRIMINATED AGAINST VINCENT BY FORCING HER TO TRANSFER TO AN INFERIOR POSITION

After removing Vincent from PVHS because of her gender, ATI then offered Vincent two inferior positions, one with a 19 % pay cut while requiring her to work at two schools and one requiring her to drive ninety 90 minutes one way to get to work. (Doc. 50-18, p. 3). The district court wrongly found that Vincent forfeited arguing that her transfer was an adverse action and wrongly determined the positioning of the transfer options as a choice rendered Vincent's transfer to an inferior position non-adverse. Vincent argued that her transfer was an adverse action

and presented substantial evidence that ATI's offer of only two positions, both inferior, constituted an adverse action. (Doc. 74, p. 40—41).

ATI's reasons for the inferior transfer options offered to Vincent are pretext for discrimination because there were several other available positions, including position at other high schools. In June 2020, there were two athletic trainer positions at high schools in the Birmingham area, including Chelsea high school, and a middle school position. (Doc. 54-3:248:14-249:22). In addition, as of June 3, 2020, there were positions available at Mountain Brook High School, Clay Chalkville High School, Jasper High School, and Pike Liberal Arts, as well as a position at Homewood Middle School for an outreach athletic trainer position. (Doc. 65-34, p. 2; Doc. 54-12:187:12-188:7; 191:13-193,210; 194:4-20; 198:13-19; 199:2-11).

ATI claims an athletic trainer was paid less if they were assigned to a middle school as opposed to a high school. Vincent presented evidence to prove that ATI's reasons for paying Vincent 19 % less were pretext for gender discrimination and the reduction in pay was an adverse action. ATI's athletic trainer pay scale for Alabama was a minimum salary of $43,600 a mid-range salary of $50,600 and a maximum salary of $57,600 and made no distinction between an athletic trainer position at a high school or middle school. (Doc. 65-20, p. 2). Vincent's pay was reduced to $46,000, which is less than the mid-range salary. (Doc. 54-3:267:20-23; 270:21-271:5; 286:11-20). Even if middle school athletic trainer positions paid less, and

there is no proof that they did, when Vincent was moved to Pelham Middle School, she was also required to work at the high school and attend all high school games. (Doc. 54-3:267:19; 271:17-272:9; 274:1-22; Doc. 65-35, p. 2).

In addition, Vincent offered evidence that a male athletic trainer, Heath Blackmon, was transferred to another school after it was determined he was engaging in conduct that put some student athletes as risk for injury and Blackmon's pay was not reduced when he was transferred. (Doc 65-14, p. 13; Doc. 65-12; Doc. 54-12:60:2-14). Bush spoke to Blackmon about these issues after the athletic trainers returned from the Covid-19 shutdown. (Doc. 54-9:71:16-72:2). Paquette made the decision to move Blackmon to another school but never disciplined him nor was there any discussion of terminating Blackmon after he knowingly put student athletes at risk for injury. (Doc. 54-12:60:15-61:2; Doc. 54-9:75:22-19; 79:15-19; 82:16-22). Blackmon's pay did not change when he was removed from PVHS and placed Blount County where he split his time covering a couple of smaller schools. (Doc. 54-9:37:1-16; 81:7-8).

Pequette's attitude toward Vincent when he spoke with her along with Erickson on June 16, 2020, is further evidence of ATI's gender discrimination. Vincent complained to Pequette and Erickson via email the day before that the transfer to Pelham Middle school was gender discrimination and retaliation for her previous complaints. Pequette and Erickson never questioned Vincent about her

complaints and instead warned her to "move forward" and not be "angry and upset," because it would make the relationship with ATI toxic. (Doc. 73-3, p. 8, 10). Erickson's and Pequette's response to Vincent's discrimination complaints regarding the inferior transfer are further evidence of ATI's intent to discriminate.

Consequently,  ATI's stated reasons for removing Vincent from PVHS and forcing her to transfer to an inferior position do not hold up, which raises issues for a jury to decide and based on the evidence a reasonable jury could conclude ATI discriminated against Vincent by acquiescing to PVHS discriminatory request to remove Vincent from PVHS and forcing her to accept transfer to an inferior, less paying position.

### THE DISTRICT COURT MISAPPLIED THE LAW APPLICABLE TO VINCENT'S TITLE VII REMOVAL CLAIM

How a district court analyzes a Title VII claim not only can determine whether or not the plaintiff receives the benefit of every possible legal theory available for proving her case but can determine whether that case will survive a motion for summary judgment. *Babb v. Secretary, Dep't. of Veterans Affairs*, 743 F. App'x 280, 287 n. 3 (11th Cir. 2018), *reversed and remanded on other grounds*, 140 S.Ct. 1168 (2020) (district court's conclusion that "each action [challenged by plaintiff] was free of an illegal motive" was made under the *McDonnell Douglas* pretext test which is inconsistent with the "mixed-motive" theory of liability).

In *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227 (11th Cir. 2016), this Court recognized that the *McDonnell Douglas* framework is fatally inconsistent with the statutory motivating factor theory of discrimination because that framework is predicated on proof of a single, true reason for an adverse action, to the exclusion of all other reasons. *Id*. at 1237. An employee can only meet her burden under the M*cDonnell Douglas* framework by demonstrating that all of the employer's purported legitimate reasons played no part in motivating the employer in making its challenged employment decision. *Quigg*, 814 F.3d at 1238; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539-43 (11th Cir. 1997 (*en banc*). "Thus, if an employee cannot rebut her employer's proffered reasons for an adverse action but offers evidence demonstrating that the employer relied on a forbidden consideration, she will not meet her burden." *Quigg*, 814 F.3d at 1238.

This standard is not consistent with the "but-for" causation standard applicable to Title VII claims generally. The Supreme Court held in *Bostock* that under Title VII there can be multiple "but-for" causes for an adverse action and that in order to prevail under Title VII a plaintiff need not prove that a protected characteristic was the only "but-for" cause. "But-for" causation does not mean "solely" because of, "primarily" because of, or "the main reason." *Bostock*, 104 S.Ct. at 1740. This traditional "but-for" causation standard means a defendant cannot avoid liability just by citing some other factors that contributed to its challenged employment decision.

"So long as the plaintiff's sex was one but-for cause of that decision, that is enough to trigger the law." *Bostock*, 140 S.Ct. at 1739.

*Quigg* established a framework for evaluating claims at summary judgment where multiple causes may exist (*i.e.* so-called "mixed-motive" theory of liability).

> That framework requires a court to ask only whether a plaintiff has offered evidence sufficient to convince a jury that : (1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action.

*Quigg*, 814 F.3d at 1239.

Under this standard, a plaintiff only needs to show that a genuine issue of material fact exists as to whether an illegal reason was a contributing factor to an adverse employment action in order to survive summary judgment. *Id.* at 1240. Further, establishing pretext, or disproving the employer's explanations for its actions is not relevant. *Vinson v. Koch Foods of Alabama*, 735 F.App'x 978, 981 (11th Cir. 2018) ("pretext has no place in a motivating factor analysis") (citing *Quigg*). While a plaintiff may seek to discredit the defendant's reasons, she need not do so in order to defeat summary judgment. She need only demonstrate a genuine issue of material fact as to whether sex was a factor in the decision. *Vinson*, 735 F.App'x at 981; *Chavez v. Credit Nation Auto Sales, LLC*, 641 F. App'x 883, 892 (11th Cir. 2016); *Blash v. City of Hawkinsville*, 2021 WL 1561347, at *9 (11th Cir. 2021). Thereafter, the employer may limit, but not eliminate, its liability by proving that it would have

made the same employment decision without considering the improper factor. *Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1084-85 (11th Cir. 1996).

A plaintiff can also survive summary judgment even if her sex was not a "but-for" cause. That is because Congress amended Title VII to include a "more forgiving" standard, §2000e-2(m), under which liability can follow even if sex was not a but-for cause of the employer's challenged decision. *Id.* Under that scenario, the defendant can avoid damages, but not liability, by proving that the plaintiff's sex was not a "but-for" cause of the adverse action. 42 U.S.C. §2000e-5(g)(2)(B). Consequently, if, based upon the evidence of record and the reasonable inferences that can be drawn therefrom, a reasonable jury could conclude that sex was a factor that ATI considered when acquiescing to PVHS discriminatory request to remove Vincent from PVHS and forcing her to accept transfer to an inferior, less paying, position, summary judgment must be denied, even if the record could support other factors that contributed to that decision or were the "but-for" causes.

The district court attempted to utilize the motivating factor standard when analyzing Vincent's Title VII termination claim. However, the district court erred in the application of that standard to the evidence.

## A. The District Court Erred By Resolving Disputes Of Material Fact In Favor of ATI

Summary judgment may not be granted if there are genuine issues as to any

material fact. Rule 56, Fed. R. Civ. Proc.  Where disputes of fact exist, the evidence of the non-movant is to be believed, *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992), and the court must "draw all inferences and review all evidence in the light most favorable to the non-moving party. *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012).  Summary judgment may only be granted if the undisputed evidence is such that it would require a directed verdict for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).  In the context of a discrimination claim, a plaintiff will always survive summary judgment if she presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.  *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

The district court accepted as fact ATI's proffered reason that Vincent was removed from PVHS because Turner requested it, (Doc. 78, p. 19-20,32), ignoring evidence to the contrary and the reasons PVHS requested Vincent be removed. Vincent was a great employee and Turner relied on her, even asking her to help gather evidence to remove Blackmon and making her the AAD. PVHS had no problems with Vincent until Shade. The district court ignored evidence that Shade did not want a woman working with his football team. Central to identifying the reasons for Vincent's removal from PVHS is the question of timing: When did Turner email Pequette claiming to have issues with Vincent? June 5, 2020. When was

31

Vincent removed from PVHS? June 5, 2020. When did PVHS first document any alleged issues with Vincent? June 8, 2020, after Vincent was removed. What did Pequette know at that time with regard to Vincent's complaints that she was being discriminated against? Why did Vincent, a good employee with no disciplinary history, go from the AAD for PVHS, to being removed? Shade. What changed? Shade not wanting a woman working with his football program. The district court ignored evidence answering these questions stating: "Just as the court found for her argument under the convincing mosaic standard, none of the evidence offered by Ms. Vincent establishes that any of ATI or Mr. Pequette's actions in removing Ms. Vincent from Pinson Valley were motivated by Ms. Vincent's gender." (Doc. 78, p. 25).

From this evidence a reasonable jury could conclude that Pequette, with the assistance of the Human Resources personnel, removed Vincent from PVHS and that her gender was a factor which motivated this decision.

The district court also failed to view the evidence in the light most favorable to Vincent and resolved inferences in favor of ATI in determining Vincent and Blackmon were treated "equally throughout the reassignment process." (Doc. 78, p. 22, 27). The district court ignored evidence regarding the favorable treatment of Blackmon and wrongfully decided, "Thus, that her new position paid less money when Mr. Blackmon's did not is not evidence of discrimination." (Doc. 78, p. 22).

The focus must be on the decisionmaker and his motivations. The district

32

court erred by ignoring evidence and resolving disputed facts in favor of the movant in granting summary judgment. The district court's decision should be reversed, and this case remanded for further proceedings.

The district court also erred in its analysis of the level of "animus" which Vincent was required to demonstrate in order to survive summary judgment. The district court's analysis, however, erroneously confuses "animus" with "animosity." 'Animus' or 'animo' is defined as "with intention, disposition." BLACK'S LAW DICTIONARY (Fifth Edition 1979). 'Animosity', on the other hand, means "strong hatred; active hostility." WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY OF THE ENGLISH LANGUAGE, Unabridged (Second Edition 1983). The fact that stereotypical comments or slurs can be evidence of "animus" does not mean that proof of "animus" requires such slurs. That is because 'animus' does not mean 'animosity'.

Violations of the employment discrimination statutes require only proof of intent, not animosity. Indeed, as the Supreme Court pointed out in *Bostock*, many of the most important Title VII sex discrimination cases do not involve hostility or animosity toward women. *Bostock*, 140 S.Ct. at 1743 (noting that, in *Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702 (1978), "the employer was not guilty of animosity against women"). If animosity were a precondition of liability, every successful Title VII case would be accompanied by punitive damages-- a result which would not be correct. *Kolstad*, 527 U.S. at 535-38 (while not necessary

to such an award, punitive damages under Title VII are appropriate where intentional discrimination is accompanied by evidence of malice)[2]. By requiring Vincent to prove that a decisionmaker harbored animus against women in general, the district court improperly elevated the standard for surviving summary judgment beyond what is required by Title VII.

In order to survive summary judgment on her "motivating factor" Title VII claim, Vincent was only required to present sufficient evidence to support the conclusion that her sex was a motivating factor in ATI's decision to remove her -- not that it was a but-for cause of that decision. The evidence presented by Vincent clearly met that standard. The district court's decision to the contrary was erroneous and should be reversed.

**D.    The District Court Improperly Interjected Issues of "Pretext."**

As already discussed, evidence of pretext is not relevant to the summary judgment inquiry in a "motivating factor" case. *Vinson*, 735 F. App'x at 981. By interjecting issues of "pretext" into a "motivating factor" case, the district court misapplied the law and held Vincent to a higher standard than required under the law.

However, having interjected the issue of pretext into the discussion, the district

---

[2] "Malice" is defined, in part, as "the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent.  BLACK'S LAW DICTIONARY (Fifth Edition, 1979).

court applied the overly-strict *McDonnell Douglas* framework to Vincent's "motivating factor" case. This was error and should be reversed.

## ATI RETALIATED AGAINST VINCENT

ATI also relied on the *McDonnel Douglas* framework in evaluating Vincent's retaliation claims. Vincent can show that retaliation was the "but-for" cause of her termination through the popular *McDonnell Douglas* framework. "Title VII prohibits an employer from retaliating against an employee because [s]he 'has opposed any practice made an unlawful employment practice.'" *Long v. Alabama Dep't of Human Res*., 650 F. App'x 957, 967 (11th Cir. 2016) (quoting 42 U.S.C. § 2000e–3(a)). To overcome summary judgment on retaliation, Plaintiff need only establish that (1) she engaged in conduct protected by the retaliation provision, (2) she suffered a materially adverse employment action, and (3) there was a causal relationship between the two. *Id*.

Vincent has created this presumption by showing she engaged in statutorily protected activity, she suffered an adverse employment action, and there is a causal connection between the two. *Calvert*, 648 F. App'x at 928-29. The employer rebuts the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Vincent then presents evidence to demonstrate that the reason provided by the employer was merely a pretext to mask its retaliatory actions. *Id.*

ATI disputes that Vincent engaged in protected activity before she was removed from PVHS. Pequette testified Vincent complained about gender discrimination before her removal on June 5, 2020. (Doc. 54-12:91:9-19). There is a dispute of fact as to when Vincent complained but it is irrelevant because a jury could conclude ATI made the decision to remove Vincent after June 5, 2020. But there is no dispute that Vincent complained before ATI forced her to accept a lower paying less desirable position. Vincent was not offered any position for transfer until June 11, 2020. (Doc. 54-3, p. 224:11-225:15). In reviewing the evidence in the light most favorable to Vincent, the first element of a prima facia case of retaliation has been established.

### VINCENT SUFFERED AN ADVERSE ACTION

The adverse action standard for Title VII retaliation claims is "decidedly more relaxed . . . ." *Crawford v. Carroll,* 529 F.3d 961, 973 (11th Cir. 2008). An action is sufficiently adverse for purposes of a Title VII retaliation claim when that action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry.* Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (internal quotation marks and citation omitted). Thus, the same action could satisfy the adverse action element of a retaliation claim but not a discrimination claim.

ATI conceded Vincent suffered an adverse action when arguing *McDonnel*

*Douglas*, but changed its position and failed to concede Vincent suffered an adverse action regarding her removal under the mixed-motive analyses. ATI's removal of Vincent from PVHS and offering her only two positions, one with a 19 % decrease in pay with more work covering two schools, or a position requiring a three hour commute every day, ninety (90) minuets one way, certainly qualifies as an adverse action. The district court incorrectly found Vincent forfeited, arguing the transfer was an adverse action. The district court also incorrectly determined ATI's choice of two positions, both undesirable, rendered the transfer non-adverse.

Several courts have concluded that a shift change can constitute a materially adverse employment action under *Burlington. E.g.*, *Smith v. City of Greensboro*, 647 F. App'x 976, 981-82 (11th Cir. 2016) (concluding that a reasonable jury could find a shift change to be materially adverse when it prevented the plaintiff from holding a second job he needed to support his family); *Prince v. Melwood Nursing Ctr., LLC*, No. 6:16-cv-1103-Orl-37DCI, 2017 U.S. Dist. LEXIS 206520, 2017 WL 6406832, at *8 (M.D. Fla. Dec. 15, 2017) (concluding that the defendant's rejections of plaintiff's applications for a shift change from night shift to day shift could constitute a materially adverse employment action where plaintiff was a mother of five children, she recently had returned from maternity leave, and she considered the possible shift change to be a promotion, given her circumstances); *Johnson v. Fla. Dep't of Corr.*, No. 3:04-CV-522-J-25HTS, 2007 U.S. Dist. LEXIS 94836, 2007 WL

4404209, at *6 (M.D. Fla. Feb. 22, 2007) (finding a jury issue as to whether a transfer was a materially adverse action because of a long commuting distance between assignments and childcare issues created by the different schedule at the newly assigned position). *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) ("Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."). For purposes of a Title VII retaliation claim, an employment action is "materially adverse" if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* ATI's removal of Vincent and forcing her to transfer to an inferior position with less pay when other positions were available meets this standard.

There is no dispute Vincent complained to Pequette about gender discrimination and based on the evidence a jury could conclude she complained before she was removed from PVHS, but it is clear she complained before being offered inferior positions on June 11, 2020. This establishes close temporal proximity. "The general rule is that close temporal proximity between the employee's protected conduct and the [adverse action] is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Patterson v. Georgia Pac., LLC*, 38 F.4th 1336, 1340 (11th Cir. 2002) (alteration

in original). This Circuit has held that close temporal proximity of one month is enough to establish that the protected activity and adverse action are not wholly unrelated. *Donnellon v. Fruehauf-Corp.*, 794 F.2d 598, 601 (11th Cir. 1986). Through this close temporal proximity, Vincent has satisfied the causal element of the *prima facie* case.

### ATI'S STATED REASONS ARE PRETEXT FOR RETALIATION

Eleventh Circuit precedent holds a plaintiff cannot quarrel with the wisdom of a defendant's proffered reasons but must meet the reason head on and rebut it showing both that the reason was false, and that retaliation was the real reason. *Patterson*, 38 F.4th at 1352. Vincent can show pretext by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action." *Munoz v. Selig Enters.*, 981 F.3d 1265, 1277 (11th Cir. 2020) (citing *Jones v. Gulf Coast Health Care of Del.*, 854 F.3d 1261, 1274 (11th Cir. 2017)).

The close temporal proximity between Vincent's complaints, removal and forced inferior position are evidence of pretext. Vincent presented details of this temporal proximity/suspicious timing evidence to the district court as proof of the causal connection in her prima facie case, and "evidence and inferences properly drawn [from the plaintiff's prima facie case] may be considered . . . on the issue of whether the defendant's explanation is pretextual." *Tex. Dep't of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248, 255 FN10 (1981). Because the close temporal proximity/suspicious timing of Vincent's removal to her complaints is evidence of pretext and could lead a reasonable juror to conclude that the reason provided by the ATI is not the "real" reason for Vincent's removal.

### TEMPORAL PROXIMITY IS NOT VINCENT'S ONLY EVIDENCE OF RETALIATORY PRETEXT

In 2017, when Vincent reported Woodard, ATI male athletic trainer, for allowing male athletes to engage in simulating sex acts, ATI's response was to move Vincent to another school and leave Woodard at PVHS.  This is the same thing ATI did when Vincent complained in June 2020. When Vincent complained in 2017 that she was being retaliated against ATI ultimately changed its mind and did not remove Vincent. But when Vincent complained again in June 2020, this time about being subjected to gender discrimination, ATI removed Vincent forcing her into an inferior position. When HR requested documentation from Pequette to support Vincent's removal, Pequette responded that Bush had documentation and "[w]e have removed two different ATs [Woodward and Blackmon] from Pinson Valley because she could not get along with them or claimed they were not competent ATs. We have had issues with her drama and constant complaints and accusations internally and with school employees." (Doc. 65-31). Then, in his deposition, he testified that, in fact, ATI had no such documentation and the only "complaints" were those appropriately lodged against Woodward and Blackmon, who were removed for

40

performance problems and not because Vincent could not get along with them. (Doc. 54-12, p. 42-45). He had no specific reasons for saying that Vincent caused drama—he testified that she was "dramatic" in her "general demeanor and combativeness" and that reporting Woodward and Blackmon constituted "drama." (Doc. 54-12, p. 43). This shows that ATI removed Vincent not because PVHS asked them to but because of her history of complaints because Bush reported to Pequette and HR, "only complaint I had on her was from another AT and it was later found to be miscommunication and she did no wrong." (Doc. 65-24, p.3)

ATI's retaliatory actions would dissuade any employee from engaging in protected activity. The evidence of retaliatory animus in the record could lead a reasonable jury to reject ATI's stated reasons for removing Vincent.

### VINCENT'S EVIDENCE CREATES A CONVINCING MOSAIC

Title VII prohibits employers from retaliating against employees for opposing unlawful employment practices. 42 U.S.C. 2000e-3(a); 42 U.S.C. § 1981; *CBOCS W., Inc. v. Humphries*, 533 U.S. 442, 457 (2008). In considering retaliation claims under both statutes, the question presented is whether a plaintiff presents sufficient evidence for a jury to determine that their protected activity is a "but-for" cause for the adverse action. *Long v. Ala. Dep't of Human Res.*, 650 F. App'x 957, 968 (11th Cir. 2016) (citing *Univ. of Tex. SW Med. Cntr. v. Nassar*, 570 U.S. 338, 352 (2013)). Courts have utilized several analytical frameworks to

determine causation in employment discrimination cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)*, Smith v. Lockheed-Martin Corp*, 644 F.3d 1321 (11th Cir. 2011). Despite ATI's reliance on *McDonnell Douglas*, and the district court's focus on pretext, Vincent presented circumstantial evidence that created a triable issue regarding the employer's discriminatory intent and the court erred by dismissing her retaliation claims. *Lockheed-Martin Corp*, 644 F.3d at 1328. As this Court stated in *Lockheed-Martin*, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Id.*

By taking an inflexible and formulaic *McDonnel* Douglas approach when analyzing Vincent's retaliation claim, the district court erred in ignoring the precedent of this Court that favors examining all evidence of an employer's intent. In *Lockheed-Martin*, the Eleventh's Circuit held that "the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment case," and that a Title VII plaintiff can survive summary judgment if she "presents circumstantial evidence that creates a triable issue concerning the employer's [retaliatory] intent." *Lockheed-Martin*, 644 F.3d at 1328; *see also Bailey v. Metro Ambulance Servs.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021) (recognizing in unpublished opinions

the Eleventh Circuit has relied on the "convincing mosaic" theory to analyze retaliation claims); *Fonte v. Lee Mem'l Health Sys.*, No. 20-13240, 2021 U.S. App. LEXIS 34256, at *20 n.5 (11th Cir. Nov. 18, 2021) (recognizing that the Eleventh Circuit has applied the convincing mosaic framework to Title VII retaliation cases); *Calvert v. Doe*, 648 F. App'x 925, 929 (11th. Cir. 2016). (applying the "convincing mosaic" approach to a Title VII retaliation claim). The *McDonnell Douglas* framework "is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013). "[A] plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith*, 644 F.3d at 1328. "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (quotation and footnote omitted).

In published precedent, this Circuit recognized the circuit panels' adoption of the convincing mosaic stating "[w]e do not appear to have considered in a precedential opinion whether a plaintiff can sustain her burden to establish a circumstantial case of retaliation by relying on the "convincing mosaic" theory, though in unpublished opinions, we have assumed that she can." *Bailey*, 992 F.3d at 1273 FN1. There is no justifiable reason to conclude that the convincing mosaic

applied to standard disparate treatment cases would not apply equally to retaliation cases under the same statutes. The "convincing mosaic" analysis looks to the intent of the employer and asks whether the evidence is enough for a jury to infer intentional discrimination. "Discrimination" is a broad umbrella term that is used to discuss both disparate treatment *and* retaliation. This umbrella coverage of the term discrimination is clear when looking to the plain text of Title VII. The retaliation provision of Title VII states "[i]t shall be an unlawful employment practice for an employer to *discriminate* against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title." 42 U.S.C. § 2000e-3 (emphasis added). The convincing mosaic is more appropriate than *McDonnell Douglas* when applied to claims with the "but-for" causation standard applicable in Title VII and § 1981 retaliation.

### THE DISTRICT COURT ERRED BY CONCLUDING THAT NO REASONABLE JUROR COULD INFER RETALIATION UNDER THE FACTS OF THIS CASE

Under either the *McDonnel Douglas* or "convincing mosaic" approach, Vincent's retaliation claims should be presented to a jury and the district court erred in granting summary judgment. Courts have recognized three broad types of circumstantial evidence under the "convincing mosaic" approach. *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011). These types include, among other

things,[3] "(1) suspicious timing, ambiguous statements, similar behavior directed at other members of the protected group, and 'other bits and pieces from which an inference of discriminatory intent might be drawn'; (2) systematically better treatment of those outside the protected class; and (3) pretext in the employer's justification." *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 976 (11th Cir. 2014). Though it is not necessary for Vincent to establish each category of evidence, she has done so, and summary judgment should be reversed on Vincent's retaliation claims.

Vincent has also presented evidence of the third broad type of circumstantial evidence for a convincing mosaic, evidence that the employer's justification for her removal is pretextual. Because this is "substantially the same as the evidence required to prove discrimination under [the *McDonnell Douglas* burden shifting analysis]," this evidence has been discussed in detail above. *Silverman*, 637 F.3d at 734.

This Circuit has found a convincing mosaic where the decision maker had knowledge of the plaintiff's protected activity, testimony created discrepancies in the employer's timeline and explanations, the word "skip" was written next to the

---

[3] Whatever form it takes, if the circumstantial evidence is sufficient to raise "a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1256 (11th Cir. 2012).

plaintiff's name, and he wasn't hired despite scoring in the top of the applicants. *Calvert v. Doe*, 648 F. App'x 925, 929-30 (11th Cir. 2016).

When viewing the totality of the circumstances in Vincent's case, the close temporal proximity between her complaints and the adverse actions, ATI's false reasons for Vincent's removal, failing to investigate or even address Vincent's complaints, telling Vincent one day after her emailed complaints to Erickson and Pequette that she should not be angry or upset because it would make her relationship with ATI toxic, and telling Vincent her options are the position at Pelham Middle school with less pay or the offered two weeks severance and unemployment. Vincent has painted a convincing mosaic of retaliatory animus.

Requiring Vincent to fully rebut the proffered reason and prove retaliation was "the real reason" is inconsistent with the Supreme Court's articulation of but-for causation and requires an invasion of the jury's province. Circuit precent requires Vincent to "meet [the proffered] reason head on and rebut it" to show pretext.[4] *Chapman v. Al. Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). Retaliation claims operate under the but for causation standard. *Nassar*, 570 U.S. 338 at 352. As the United States Supreme Court has stated, a "but-for" cause does not need to be the only cause, sole cause, primary cause, or even main cause.

---

[4] This standard is also higher than the standard included in the Eleventh Circuit Pattern Jury Instructions. 11th Cir. P.J.I. 4.22.

*Bostock v. Clayton County, GA*, ____ U.S. _, 140 S.Ct. 1731, 1739 (2020). In fact, [o]ften, events have multiple but-for causes."[5] *Id.* When deciding if protected activity is a "but-for" cause it "doesn't matter if other factors" besides the protected activity contributed to the decision. *Id.* at 1741. The test for but-for causation requires changing one thing at a time to determine if the outcome changes. *Id.* at 1739. As the Supreme Court opinioned, if one party runs a red light and another party fails to signal and the cars collide, both actions could be but-for causes of the collision. *Id.* This sweeping standard means "a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision." *Id.* If retaliation is one but-for cause of the removal, Vincent has met her burden. *Id.*

This standard, that there can be more than one but-for cause, makes it impossible for a court to determine whether retaliation was the "real reason" without invading the province of the jury. Rule 56 of the Federal Rules of Civil Procedure requires that all facts and reasonable inferences be drawn in the light most favorable to the non-moving party. In cases where the plaintiff asserts discrimination as the motive for the adverse action and the defendant presents an

---

[5] Because retaliation claims in general are based on complaints of underlying discrimination, arguably they all have or potentially have multiple but-for causes. If a plaintiff establishes both a race discrimination case and a retaliation case, they have shown at least two but-for causes.

alleged legitimate reason, to determine if the defendant's legitimate non-discriminatory is or is not the "real reason" the court would be required to make credibility determinations, weigh the evidence, draw inappropriate inferences, or inappropriately resolve factual disputes. A jury may choose to disbelieve the employer's reasons because it gets the sense that the employer is lying, has lied, is evasive, has misrepresented facts or otherwise. In the instant case the facts that could lead a jury to discredit some or all of ATI's testimony or position. Pretext can be supported by a well-founded suspicion of mendacity. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147 (2000); *see also Hamrick v. Am. Cas. Co.*, 245 F. App'x 891, 893 FN3 (11th Cir. 2007). Choosing whether to believe of disbelieve a witness or testimony is a province reserved for the trier of fact.[6]

### ATI Did Not Argue Vincent Could Not Meet The Motivating Factor

---

[6] The conflict between the rebuttal of legitimate non-discriminatory reasons and but-for causation likely arises from the shift in the trier of fact. Prior to the Title VII amendments, during the prime of *McDonnell Douglas*, the judge served as the trier of fact for employment discrimination cases. However, after the amendments, the jury became the trier of fact and absorbed the duties of making credibility determinations and resolving factual disputes. The Supreme Court discussed the interaction between legitimate non-discriminatory reasons, pretext, and the trier of fact in *Burdine* stating "[a] satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Burdine*, 450 U.S. at 255 FN10. It is because of this conflict that the convincing mosaic is a more appropriate analytical framework for these employment disputes.

## Standard Applicable To Title VII Cases

It is well-settled in the Eleventh Circuit that it is up to the parties, not the court, to frame issues for the court's consideration. *Ramirez v. Secretary, U.S. Dept. of Transp.*, 686 F.3d 1239, 1250 (11th Cir. 2012). "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). Similarly, it is not the duty of the court to uncover and discuss every potential argument that can be made. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). The District Court must be mindful of its neutrality and avoid making arguments not advanced by the parties or coaching either party on the proper preparation of their pleadings. *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1291, 1303 n. 2 (11th Cir. 1988).; *U.S. v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) (opinion by Judge Neil M. Gorsuch) (it is not the court's duty to make arguments for a litigant that he has not made for himself); *cf. Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (refusing to consider theory of liability that plaintiff had every opportunity to advance in the district court).

Rule 7, Fed. R. Civ. Proc., provides that a "request for a court order must be made by motion." Rule 7(b)(1). Said motion must be in writing and must "state with particularity the grounds for seeking the order." Rule 7(b)(1)(B). The district courts

routinely refuse to consider arguments not properly presented for consideration. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (district court did not abuse its discretion in declining to consider argument that was not first presented to the magistrate judge). Further, district courts may not grant summary judgment on grounds not argued by the moving party without giving notice so that the non-moving party has a full opportunity to present relevant evidence and argument. *Williams v. City of Chicago*, 733 F.3d 749, 755 (7th Cir. 2013).

ATI did not argue in its initial brief that the evidence was insufficient for a jury to conclude that Vincent's sex was a motivating factor in ATI's decision to remove Vincent or that Vincent could not meet the proof standards set forth in 42 U.S.C. §2000e-2(m). The arguments advanced by ATI in its brief were limited to the *McDonnell Douglas* framework.[7] (Doc. 43:23-26.) As discussed more fully above the *McDonnell Douglas* framework imposes a heavier burden on employees, and a correspondingly lighter burden on employers, at the summary judgment stage then the statutory motivating factor standard. *Bostock*, 140 S.Ct. at 1740. See also Doc. 46:12 n. 6, noting that the *McDonnell Douglas* framework is not applicable to

---

[7] While Vincent responded to ATI's motion by explaining why her claim could survive under the motivating factor standard, her response cannot be considered a modification or expansion of ATI's motion as she does not have that authority. Here arguments were made to avoid the possibility that the district court would consider her theory of liability to have been abandoned. *See Deputy v. City of Seymour*, 2014 WL 4907911 at *4 (S.D. Ind. 2014).

Vincent's "mixed-motive" sex discrimination claim.

ATI was aware that Vincent was pursuing her Title VII claim pursuant to §2000e-2(m); it raised the affirmative defense to that claim in its Answer. (Doc. 37). Consequently, this is not a case, like *Tesoriero v. Carnival Corp.*, 2017 WL 8895347 at *3 (S.D. Fla. 2017), where the movant mentioned both theories of liability in its motion. Rather, this case is governed by the principle set forth in *Gentry v. Harborage Cottages-Stuart, LLLP*, 654 F.3d 1247, 1261 (11th Cir.2011) (a court may only grant a motion for summary judgment on grounds not raised by a party only after giving notice and a reasonable opportunity to respond).

Because ATI did not ask the district court to rule on Vincent's motivating factor claim, the district court's decision granting summary judgment on that claim was in error and should be reversed.

## **CONCLUSION**

In 1991 Congress amended Title VII of the Civil Rights Act and incorporated a new standard for establishing liability under the law. This new standard conflicts with case authority interpreting the prior version of the law. Vincent pursued her claims pursuant to this new theory of liability. ATI did not move for summary judgment based upon that theory but relied upon the outdated *McDonnell Douglas* framework. The District Court did not comply with the requirements of Rule 56 when it did so.

Further, the district court misapplied the law and, therefore, imposed obligations upon her that are not consistent with the motivating factor statutory standard.

The district court's decision granting summary judgment on Vincent's Title VII removal and transfer claims, as well as her retaliation claims is error. The district court's judgment should be reversed, and this case remanded for trial.

Respectfully submitted this the 18th day of October 2023.

s/Cynthia Wilkinson<br>
Cynthia Wilkinson<br>
Richard Bearden<br>
Attorneys for Appellant

**OF COUNSEL:**
Wilkinson Law Firm PC
1717 3rd Avenue North, Suite A
Birmingham, AL 35203
Telephone: (205) 250-7866
cwilkinson@wilkinsonfirm.net

Massey, Stotser & Nichols, PC
1780 Gadsden Highway
Birmingham, AL 35235
Telephone: (205) 838-9000
rbearden@msnattorneys.com

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(A)</u>

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Fed. R. App. P. 29(d) because it contains 12921 words, exclusion the parts of the brief exempted by Fed. R. App. P. 32(f) as calculated by the word-counting feature in Microsoft Word. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14 point-font, Times New Roman.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of October 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Janell Ahnert, Esq.
Patrick D. Schach, Esq.
LITTLER MINDELSON, P.C.
420 20th Street North, Suite 2300
Birmingham, Alabama 35203

s/Cynthia Forman Wilkinson
Of Counsel