No. 23-12417

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

EMILY VINCENT,
　　　Plaintiff-Appellant,

v.

ATI HOLDINGS LLC, et al.,
　　　Defendants-Appellees.

On Appeal from the United States District Court
for the Northern District of Alabama, No. 2:21-cv-00514
Hon. Annemarie Carney Axon, United States District Judge

**BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
PLAINTIFF-APPELLANT AND REVERSAL**

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ELIZABETH E. THERAN
Assistant General Counsel

TARA PATEL
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2770
Tara.Patel@EEOC.gov

*Vincent v. ATI Holdings LLC, et al.*, No. 23-12417

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rules 26.1-1 and 29-2, the Equal Employment Opportunity Commission (EEOC) as amicus curiae certifies that, in addition to those listed in the certificates filed by the plaintiff-appellant and the defendants-appellees, the following persons and entities may have an interest in the outcome of this case:

1. Equal Employment Opportunity Commission (EEOC) (Amicus Curiae)

2. Gilbride, Karla (General Counsel, EEOC)

3. Goldstein, Jennifer S. (Associate General Counsel, EEOC)

4. Patel, Tara (Attorney, EEOC)

5. Theran, Elizabeth E. (Assistant General Counsel, EEOC)

Pursuant to Federal Rule of Appellate Procedure 26.1, the EEOC, as a government agency, is not required to file a corporate disclosure statement. The EEOC is not aware of any publicly traded corporations or companies that have an interest in the outcome of this case or appeal, other than those identified in the Certificates previously filed by the parties.

/s/ *Tara Patel*
TARA PATEL
Attorney
EQUAL EMPLOYMENT

*Vincent v. ATI Holdings LLC, et al.*, No. 23-12417

OPPORTUNITY COMMISSION

Office of General Counsel

131 M St. N.E., 5th Floor

Washington, D.C. 20507

202-921-2770

Tara.Patel@EEOC.gov

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
  DISCLOSURE STATEMENT.......................................................... C-1

TABLE OF AUTHORITIES........................................................................iii

STATEMENT OF INTEREST ...................................................................1

STATEMENT OF ISSUES ........................................................................1

STATEMENT OF THE CASE.....................................................................2

      A.    Statement of the Facts .........................................................2

      B.    District Court's Decision ..................................................11

SUMMARY OF ARGUMENT ................................................................13

ARGUMENT...........................................................................................14

      I.     A reasonable jury could find ATI was Vincent's joint
  employer with control over her removal......................................14

      II.    A reasonable jury could find ATI discriminated against
  Vincent by acquiescing to PVHS's discriminatory removal
  request and by forcing her to transfer to an inferior
  position................................................................................................17

           A.    Vincent's removal from PVHS...............................17

           B.    Vincent's forced transfer .......................................21

      III.   A reasonable jury could find that ATI retaliated against
  Vincent by removing her from PVHS and by forcing her
  to transfer to an inferior position. ................................................26

      A.    Vincent's removal from PVHS ............................................27

      B.    Vincent's forced transfer .......................................................31

CONCLUSION ......................................................................................33

CERTIFICATE OF COMPLIANCE ....................................................35

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby,*
  477 U.S. 242 (1986) .................................................................2

*\*Burlington N. & Santa Fe Ry. Co. v. White,*
  548 U.S. 53 (2006) ...........................................................27, 32

*Burton v. Freescale Semiconductor, Inc.,*
  798 F.3d 222 (5th Cir. 2015) .................................................18

*Cleveland v. Home Shopping Network, Inc.,*
  369 F.3d 1189 (11th Cir. 2004) .......................................20, 30

*Combs v. Plantation Patterns,*
  106 F.3d 1519 (11th Cir. 1997) .............................................30

*Diaz v. Pan Am. World Airways, Inc.,*
  442 F.2d 385 (5th Cir. 1971) .................................................29

*Donnellon v. Fruehauf Corp.,*
  794 F.2d 598 (11th Cir. 1986) ...............................................28

*EEOC v. Glob. Horizons, Inc.,*
  915 F.3d 631 (9th Cir. 2019) .................................................18

*Hicks v. Forest Pres. Dist. of Cook Cnty,*
  677 F.3d 781 (7th Cir. 2012) .................................................32

*Hinson v. Clinch Cnty., Ga. Bd. of Educ.,*
  231 F.3d 821 (11th Cir. 2000) ...............................................21

*Holland v. Gee,*
  677 F.3d 1047 (11th Cir. 2012) .............................................22

*Kamen v. Kemper Fin. Servs., Inc.,*
    500 U.S. 90 (1991)................................................................25

*Kidd v. Mando Am. Corp.,*
    731 F.3d 1196 (11th Cir. 2013)..........................................26

*King v. Piggly Wiggly Ala. Distrib. Co.,*
    929 F. Supp. 2d 1215 (N.D. Ala. 2013)............................26

*Lewis v. City of Union City,*
    918 F.3d 1213 (11th Cir. 2019) (en banc) ...................25, 26

*Lewis v. City of Union City,*
    934 F.3d 1169 (11th Cir. 2019)...........................22, 23, 24

*Llampallas v. Mini-Circuits, Lab, Inc.,*
    163 F.3d 1236 (11th Cir. 1998)..........................15, 16, 17

*Merritt v. Dillard Paper Co.,*
    120 F.3d 1181 (11th Cir. 1997)..........................................30

*Monaghan v. Worldpay US, Inc.,*
    955 F.3d 855 (11th Cir. 2020)......................................27, 32

*Montoya v. Morgan,*
    No. 3:16-cv-92-MCR/EMT, 2018 WL 4701795 (N.D. Fla. Sept.
    30, 2018) ...............................................................................32

*Muldrow v. City of St. Louis,*
    143 S. Ct. 2686 (2023)........................................................22

*Osram Sylvania, Inc. v. Teamsters Local Union 528,*
    87 F.3d 1261 (11th Cir. 1996)..........................................19

*Patterson v. Ga. Pac., LLC,*
    38 F.4th 1336 (11th Cir. 2022)..........................................30

*Pennington v. City of Huntsville,*
    261 F.3d 1262 (11th Cir. 2001)..........................................27

*Peppers v. Cobb Cnty*,
    835 F.3d 1289 (11th Cir. 2016) ........................................................15

*Platner v. Cash & Thomas Contractors, Inc.*,
    908 F.2d 902 (11th Cir. 1990) ..........................................................29

*Quigg v. Thomas Cnty. Sch. Dist.*,
    814 F.3d 1227 (11th Cir. 2016) ........................................................19

\*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000).........................................................................26

*Shannon v. Bellsouth Telecomms., Inc.*,
    292 F.3d 712 (11th Cir. 2002) ..........................................................28

*Smith v. Gen. Lab. Staffing Servs., Inc.*,
    No. 11-81011, 2012 WL 13018987 (S.D. Fla. Jan. 27, 2012) ..........18

\*Smith v. Lockheed-Martin Corp.*,
    644 F.3d 1321 (11th Cir. 2011) ........................................................22

*Thibodeaux v. CLECO Util. Grp.*,
    88 F. App'x 711 (5th Cir. 2004) .......................................................32

*Thomas v. Cooper Lighting, Inc.*,
    506 F.3d 1361 (11th Cir. 2007) (per curiam)....................................28

*UAW v. Johnson Controls*,
    499 U.S. 187 (1991).....................................................................20, 30

\*Virgo v. Riviera Beach Assocs., Ltd.*,
    30 F.3d 1350 (11th Cir. 1994).................................................14, 15, 17

*Wascura v. City of S. Miami*,
    257 F.3d 1238 (11th Cir. 2001) ........................................................19

*Whitaker v. Milwaukee Cnty*,
    772 F.3d 802 (7th Cir. 2014) ............................................................18

*Yelling v. St. Vincent's Health Sys.*,
   __ F.4th __, No. 21-10017, 2023 WL 6474713 (11th Cir. Oct. 5,
   2023) (per curiam) ....................................................................................22, 23

**Statutes**

*42 U.S.C. § 2000e-2(a)(1) ........................................................................21, 22

42 U.S.C. §§ 2000e *et seq.*........................................................................1

**Rules & Regulations**

29 C.F.R. § 1604.2(a)(1)(iii) ...........................................................................29

Fed. R. App. P. 29(a)(2)..................................................................................1

**Other Authorities**

Br. of the United States as Amicus Curiae, *Muldrow v. City of St.
   Louis*,
    No. 22-193 (S. Ct. Sept. 5, 2023)...................................................................22

Enforcement Guidance: Application of EEO Laws to
   Contingent Workers Placed by Temporary Employment
   Agencies and Other Staffing Firms (Dec. 3, 1997), 1997 WL
   33159161......................................................................................................16, 18

*\* indicates citations upon which the EEOC primarily relies*

## STATEMENT OF INTEREST

Congress tasked the Equal Employment Opportunity Commission with administering and enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* This appeal presents important questions concerning the definition of an "employer" under Title VII and the appropriate summary-judgment standard for sex-discrimination and retaliation claims. Because the EEOC has a substantial interest in the proper resolution of these questions, the agency offers its views. *See* Fed. R. App. P. 29(a)(2).

## STATEMENT OF ISSUES[1]

1.  Whether a reasonable jury could find defendant ATI Holdings, LLC ("ATI") was an "employer" under Title VII with control over plaintiff Emily Vincent's removal.

2. Whether a reasonable jury could find ATI discriminated against Vincent by acquiescing to a high school's discriminatory removal request and by forcing her to transfer to an inferior position.

---

[1] We take no position on any other issues in this appeal.

3. Whether a reasonable jury could find ATI retaliated against Vincent by removing her from her high-school assignment and by forcing her to transfer to an inferior position.

## STATEMENT OF THE CASE

### A.   Statement of the Facts[2]

ATI is a rehabilitation-services provider that places athletic trainers in schools. R.54-1 at 2-3(¶¶3-4).[3] Under its contract with Pinson Valley High School ("PVHS"), ATI compensated its trainers directly and remained "solely liable for the oversight and performance of such personnel." R.54-1 at 10(¶7),11(¶12),13. The contract required ATI to provide two trainers to PVHS, with the school's approval, but was silent regarding removal authority. R.54-1 at 3(¶5),13.

ATI hired Vincent as an athletic trainer in mid-2017 and assigned her, along with trainer Chris Woodard, to PVHS. R.54-4 at 1-4; R.54-3 at 36-37. Vincent and Woodard reported directly to ATI managers Alex Wolf and

---

[2] Because this appeal is from a summary-judgment decision, we recount the record facts in the light most favorable to Vincent, the nonmoving party. *See generally Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[3] "R.# at #" refers to the district-court docket entry and CM/ECF-assigned page numbers.

Chris King, who in turn reported to ATI Director of Sports Medicine Jason

Pequette. R.54-3 at 5-7,36-38. Vincent's and Woodard's onsite supervisor

was PVHS Athletic Director and Head Coach Patrick Nix, who reported to

Principal Michael Turner. R.54-3 at 7. Vincent was the only woman in

PVHS's football program. R.54-3 at 88.

Vincent performed well throughout her tenure at PVHS. Neither ATI

nor PVHS ever gave her a reprimand or poor evaluation. R.54-3 at

33,65,73,87; R.65-24; R.54-9 at 15-16,33. PVHS recognized her as Trainer of

the 2018 Spring Quarter and, as described below, Turner named her

assistant athletic director in May 2020. R.54-3 at 22-24,87. Both Pequette and

Vincent's direct ATI supervisor testified she "was a great athletic trainer."

R.54-9 at 15; R.54-12 at 44.

In November 2017, Vincent observed Woodard laughing with male

students while the students simulated sex acts and talked about girls they

had "been with." R.54-3 at 10-11,42; R.65-28 at 3. She told him his conduct

was inappropriate and reported him to Nix, Wolf, and King. *Id.* Although

Wolf and King confirmed they would handle the situation, Wolf informed

Vincent a week later that ATI planned to transfer *her* to another school,

with support from Turner, because Woodard had a "better rapport with

3

the coaches." R.54-3 at 11-12,43; R.65-29 at 2-4. Pequette testified Vincent had a duty to report the incident, but stated the trainers needed to "get along." R.54-12 at 35.

When Vincent asked Turner about the transfer, he denied supporting it and told Vincent she was his "fav[orite]." R.65-10 at 4; R.54-3 at 43. After Vincent told Pequette that the transfer seemed retaliatory given her recent complaint about Woodard, Pequette conceded Wolf had "mishandled" the situation and stated that Vincent would not be transferred, but admonished her for being "combative" by contesting it. R.54-3 at 11-12,43-44. ATI eventually removed Woodard from PVHS. R.54-12 at 41.

In fall 2019, ATI made Dave Bush Vincent's direct supervisor and assigned Heath Blackmon to PVHS as a second trainer. R.54-2 at 3(¶3),4(¶4). After months of observing Blackmon shirking work and endangering student-athletes' health by misdiagnosing and minimizing their injuries, Vincent reported him to Turner and Bush and, on Turner's request, submitted four pages of concerns. R.54-3 at 16-17; R.54-9 at 19; R.65-19 at 2-6. Turner then emailed Pequette stating Pequette "ha[d] received very detailed" descriptions of Blackmon's misconduct and "requesting" that ATI remove Blackmon from PVHS immediately. R.54-8 at

4

57. After speaking with Blackmon and consulting with HR, Pequette

agreed, and ATI transferred Blackmon to another school at the same salary.

R.54-12 at 18-20,32; R.54-9 at 12.

In February 2020, Sam Shade replaced Nix as PVHS's Head Football

Coach and Athletic Director. R.50-2 at 269-70. ATI furloughed its trainers a

few weeks later due to the COVID-19 pandemic. R.54-3 at 19,28. After in-

person meetings resumed at the end of May, Turner asked Vincent to be

PVHS's assistant athletic director, which was how she introduced herself in

a May 31 staff meeting. R.50-2 at 272-73; R.54-3 at 24-25. Three days later,

however, Turner instructed Vincent to "stop doing athletic director duties"

and return to training. R.54-3 at 22,28. He refused to provide reasons for the

demotion but nevertheless affirmed that Vincent "worked hard for the

kids" and was doing a great job. R.54-3 at 28-29.

Later that day, Kenneth Shepherd, one of the football coaches, told

Vincent that her demotion made sense because Shade had said he was

uncomfortable working with Vincent because she was a woman, and that

he did not have any experience working with women in football. R.54-3 at

21. Concerned that Shade could jeopardize her future at PVHS, Vincent

5

asked Bush about alternate positions; Bush responded with potential high-school placements with salaries matching Vincent's. R.54-3 at 54-55,64.

Sometime before June 5, Vincent told Pequette about Shade's comment about not wanting to work with a woman.[4] According to Vincent, Pequette characterized it as a "he said, she said" situation that she "can't prove." R.54-3 at 60,65. Pequette later acknowledged in his deposition that Vincent reported Shade's comments, which he recognized as discriminatory, but that he never questioned Turner or Shade. R.54-12 at 21-23,40; R.54-5 at 64-64 (Turner confirming as much). When asked how he protected Vincent from discrimination, Pequette answered that ATI transferred her elsewhere. R.54-12 at 23-24. He also insisted that even if PVHS's request for Vincent's removal was fully motivated by her gender, it "doesn't matter…we have to comply." R.54-12 at 21. But when asked how he would respond if Turner stated he did not want Black trainers at his

---

[4] Although Vincent testified she did not speak with Pequette prior to June 5 "that week," she made clear she told him of Shade's comments "a few days before [Shade] had come in," *i.e.*, before June 5. R.54-3 at 57,60. Pequette himself testified that Vincent told him of the discrimination prior to June 5, R.54-12 at 25, which aligns with his June 5 morning email to Turner, R.65-14 at 10.

school, Pequette testified, "I would tell them that that's not how ATI operates and that [we] want to put the most qualified athletic trainer in any position." *Id.*

On June 5, Pequette emailed Turner to discuss Vincent's situation. R.65-14 at 10. According to Turner, the "gist" of the resulting call was that it was time to part ways with Vincent. R.54-5 at 62. Pequette asked Turner to provide written, specific reasons supporting her removal. R.54-12 at 29-30; R.64-14 at 2. Pequette emailed ATI HR official Laura Erickson that PVHS was "fed up" with Vincent and did not want her to return, and that he would tell Vincent ATI would "investigate" the issue. R.65-14 at 2. When Erickson asked whether "there [had] been ongoing issues," Pequette answered "yes," R.65-14 at 3,5, but later testified that he was unaware of any. R.54-12 at 35,42.

After the call with Pequette, Turner instructed Shade to retrieve Vincent's keys at the end of the day. R.54-5 at 56,65. Shade complied, and Vincent thereafter reiterated to Pequette that PVHS was discriminating against her. R.54-3 at 55-57. Pequette told her to "play nice" and he would follow up with her. R.54-3 at 57. When Coach Shepherd learned of

Vincent's removal, he texted her, "So all this because they wanted a man …" R.54-3 at 84; R.65-1 at 3.

On June 8, Pequette reminded Turner he needed documentation supporting the removal request. R.65-14 at 12. Turner's responsive memo stated Vincent "created somewhat of a toxic work environment for some of our coaches," "made personal" and "derogatory" comments about some of them, gave guidance outside of her authority and, according to Coach Shade, expressed "dissatisfaction" with her trainer position in the recent coaches' meeting. He concluded by "asking" that ATI remove Vincent from PVHS. R.65-23.

Turner later testified, however, that the only facts supporting his memo—none of which he had previously shared with Vincent or ATI—were that Vincent was skeptical of some of the new coaches' competencies, that she offended a coach by asking him to remove a poster memorializing another school's championship, and that she called herself "assistant athletic director," a title he denied giving her. R.54-5 at 62-64,68. Pequette, too, testified that the memo "lack[ed] … specificity," but that he did not follow up. R.54-12 at 30,33. Turner also underscored that the removal decision "wasn't my call" and "would have to come from ATI, because

8

that's who she was employed with," and that Pequette would be the one to inform Vincent. R.54-5 at 60,66,73.

After Pequette forwarded Turner's memo to Erickson, Erickson requested documentation of performance issues. R.65-31 at 2-3. Pequette responded that Bush had documentation, and that "[w]e have removed two different ATs [Woodard and Blackmon] from Pinson Valley because she could not get along with them or claimed they were not competent ATs. We have had issues with her drama and constant complaints and accusations internally and with school employees." *Id.* Erickson replied this was not enough to terminate Vincent from ATI. *Id.* When Erickson emailed Bush for the documentation, Bush responded that the "only complaint I had on her … was later found to be miscommunication and she did no wrong." R.65-24.

Pequette testified that, in fact, ATI had no such documentation and the only "complaints" were those appropriately lodged against Woodard and Blackmon, who were removed for performance problems and not because Vincent could not get along with them. R.54-12 at 42-45. Although Pequette gave no specific reasons for saying that Vincent caused drama, he testified that she was dramatic in her "general demeanor and

combativeness" and that reporting Woodard and Blackmon constituted "drama." R.54-12 at 43. ATI refused to give Vincent a reason for her removal, despite her multiple requests. R.54-3 at 57-60; R.54-12 at 32-33,53-54; R.65-35 at 8-9; R.73-3 at 12,16-19.

On June 11, ATI gave Vincent four days to resign or choose among three positions: two at middle schools, each entailing a nineteen-percent pay cut and significant high-school responsibilities, and another with a three-hour roundtrip commute covering two high schools that, according to Vincent, prevented her from offering complete coverage to athletes or building rapport with the administration. R.65-35 at 4-10; R.54-3 at 63,66,69-71. ATI's Alabama athletic-trainer pay scale makes no distinction between middle- and high-school positions, R.65-20, and an email exchange reflects that Pequette had input over trainers' salaries, including Vincent's, R.65-33 at 2,5-6;R.54-12 at 24,49. Another ATI email exchange shows several additional available positions, including at four high schools, none of which ATI offered Vincent. R.65-34; R.54-12 at 50-52.

Vincent asked Erickson about one of the high-school openings that Bush had referenced, requested a later deadline, and asked to meet with school personnel to assess which position would be a good fit. R.65-35 at 2-

10

9. Erickson refused or ignored her inquiries and demanded again that Vincent choose or resign. *Id.* Vincent emailed that she was "reluctantly tak[ing] the [middle-school] position" but was "being forced to accept [it] in order to keep my job. I believe this is retaliation for my complaints of gender discrimination and is, itself, further gender discrimination." *Id.*

Despite failing to investigate Vincent's complaints, Pequette and Erickson, in a subsequent call with Vincent, denied ATI was discriminating or retaliating against her. R.73-3 at 4; R.54-12 at 53-54. They instead asserted her removal was because of allegations of which she was "aware." R.73-3 at 3-20. When Vincent begged for specifics, they provided none. They advised her to "move forward" and not be "angry and upset," because it would make her relationship with ATI "toxic[]." R.73-3 at 8-10.

Within a week, ATI replaced Vincent at PVHS with a male trainer. R.54-3 at 88; R.65-2. Vincent resigned from ATI effective July 16, 2020, and later filed suit.

## B. District Court's Decision

The district court first rejected ATI's argument that it could not be held liable because PVHS was the only entity responsible for Vincent's removal, instead finding a genuine dispute over which entity controlled

11

the removal. R.78 at 12-15. It next ruled that Vincent's sex-discrimination

claims failed under both a "convincing mosaic framework" and a "mixed

motive theory."[5] As to Vincent's removal, in applying the convincing-

mosaic standard the court considered only Pequette's testimony that he

would have complied with a discriminatory removal request and ATI's

replacement of Vincent at PVHS with a man. *Id.* at 16-21. It refused to

consider, *inter alia*, ATI's comparatively better treatment of Blackmon,

Vincent's sex-discrimination complaint, and Vincent's lack of discipline,

finding the evidence "unpersuasive" or not reflective of discrimination. *Id.*

at 18-20. Regarding the transfer, the court held that Vincent failed to argue

it was an adverse action, and rejected her argument that her salary was

reduced, while Blackmon's was not, based on Vincent's "agency" in

"select[ing] a job with a corresponding pay cut." *Id.* at 22,26.

     The court also rejected Vincent's claims that ATI retaliated against

her for complaining about sex discrimination. It held that Vincent could

not establish a prima facie case of retaliation regarding her removal

---

[5] Because the EEOC takes no position on the application of the mixed-
motive theory to this case, we do not discuss it further.

because "her protected activity occurred after the removal decision, breaking the chain of causation." *Id.* at 29. As to Vincent's involuntary transfer, the court maintained that Vincent forfeited arguing a transfer to the long-commute position was an adverse action, and that the transfer to the lower-paid position was not an adverse action because she chose it. *Id.* at 31-32. It also held that, in any event, Vincent failed to adduce evidence showing that ATI's reasons for removing and/or transferring her were pretextual. *Id.* at 33. According to the court, ATI removed Vincent because of Turner's request and transferred her because "she accepted" from "available positions" "the one with the pay cut." *Id.* at 32-33.

## SUMMARY OF ARGUMENT

The district court correctly found a genuine factual dispute as to whether ATI was an "employer" under Title VII with control over Vincent's removal. It erred, however, when it granted summary judgment to ATI on Vincent's discrimination and retaliation claims. A reasonable jury could find that joint-employer ATI discriminated against Vincent when it acquiesced to PVHS's discriminatory removal request—an argument missing from the district court's analysis. As to whether ATI's forced transfer of Vincent was discriminatory, Vincent survives summary

13

judgment under either the convincing mosaic framework, which the district court misapplied, or the *McDonnell Douglas* framework.

The district court also erred when it found that a lack of causal connection and the failure to show pretext defeated Vincent's retaliation claim regarding her removal. Vincent met her summary-judgment causation burden and highlighted standard pretext evidence. And last, a reasonable jury could find ATI retaliated against Vincent by forcing her to transfer to an inferior position. The district court incorrectly found that Vincent's "choice" among materially adverse actions shielded ATI from Title VII liability and again failed to consider legitimate pretext evidence.

## ARGUMENT

### I.    A reasonable jury could find ATI was Vincent's joint employer with control over her removal.

An entity must be an "employer" to be liable under Title VII, a term interpreted "liberally." *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1359 (11th Cir. 1994) (citation omitted). The joint-employer doctrine applies where two entities "share or co-determine those matters governing the essential terms and conditions of employment." *Id.* at 1360 (citation omitted). The inquiry "concentrate[s] on the degree of control an entity has

over the adverse employment decision on which the Title VII suit is based." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998). Whether an entity "retained sufficient control is essentially a factual question," *Virgo*, 30 F.3d at 1360, and depends on the "total employment situation," *Peppers v. Cobb Cnty*, 835 F.3d 1289, 1300 (11th Cir. 2016) (citation omitted).

The record reflects that ATI and PVHS shared sufficient control over the "essential terms and conditions" of Vincent's employment to support a finding they were joint employers.[6] ATI retained "control over [Vincent's] work and remained "solely responsible" for her salary and benefits. R.54-1 at 10(¶7),13. A jury could find that both entities supervised Vincent and played a role in hiring, removing, and replacing the school's trainers. *See supra* pp.2-3*; Virgo*, 30 F.3d at 1360 (defendant-company was an "employer" even where another entity made "day-to-day decision[s]" because, *inter alia*, defendant compensated employees and paid their taxes

---

[6] Although the district court did not use the joint-employer label, its reliance on *Virgo*'s discussion of joint-employer status, 30 F.3d at 1360, and its acknowledgement that "one entity employ[ed] an individual to perform services for a client" suggest it viewed ATI and PVHS as joint employers. R.78 at 13.

and insurance); Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms (Dec. 3, 1997), 1997 WL 33159161 ("Contingent Worker Guidance"), at *5-6 (staffing firm and client are joint employers where: firm sends charging party to perform long-term project "on the client's premises," "[t]he client supervises [her], sets her work schedule, provides the necessary equipment," and gives her tasks, whereas the "firm pays her," "reviews her work," and "replace[s]" her upon unacceptable work).

As to the "degree of control [ATI] has over the adverse employment decision," *Llampallas*, 163 F.3d at 1244-45, a jury could find ATI retained control over Vincent's removal from PVHS. First, ATI had removed trainers from PVHS in the past, including both Woodard and Blackmon. *Supra* pp.4-5. Additionally, Pequette testified that he would reject a school's request for a trainer of a certain race, further suggesting control over who worked at PVHS. R.54-12 at 21. Moreover, a jury could find, the exchange between Turner and Pequette over Vincent's (like Blackmon's) removal directly reflects shared control, with Turner "asking" Pequette for Vincent's removal and Pequette requesting supporting documentation and

16

promising to "investigate." R.65-23;R.65-14 at 2. Indeed, Turner testified

that ATI was responsible for the removal decision and that Pequette would

notify Vincent. R.54-5 at 60,66,73. This Court should thus affirm the district

court's ruling on this issue.

## II.    A reasonable jury could find ATI discriminated against Vincent by acquiescing to PVHS's discriminatory removal request and by forcing her to transfer to an inferior position.

### A.    Vincent's removal from PVHS

Determining that ATI is an "employer" with control over Vincent's

removal does not itself establish Title VII liability. To hold ATI liable, a

trier of fact must find both that ATI had control over the action at issue and

that the action was, in fact, discriminatory. *See Llampallas,* 163 F.3d at 1244-

45 (holding defendant not liable where it "had absolutely nothing to do

with [termination] decision"); *Virgo*, 30 F.3d at 1361-63 (analyzing both

whether defendant had control over harassment and sufficiency of

harassment evidence).

Beyond general discussions of "control," however, this Court has not

yet articulated a clear standard for joint-employer *liability* for situations

such as that arising here. We therefore recommend that this Court adopt

the standard several other circuits use: an employer "is liable for the

discriminatory conduct of its joint-employer client if it participates in the discrimination, or if it knows or should have known of the … discrimination but fails to take corrective measures within its control." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228-29 (5th Cir. 2015) (citing Contingent Worker Guidance at *11); *EEOC v. Glob. Horizons, Inc.*, 915 F.3d 631, 641 (9th Cir. 2019) (same); *Whitaker v. Milwaukee Cnty*, 772 F.3d 802, 812 (7th Cir. 2014) (same); *Smith v. Gen. Lab. Staffing Servs., Inc.*, No. 11-81011, 2012 WL 13018987, at *3-4 (S.D. Fla. Jan. 27, 2012) (same); *see also Burton*, 798 F.3d at 229 (rejecting argument that contract required defendant to acquiesce in joint employer's request to terminate disabled employee: "a contractual obligation to discriminate would be unenforceable"—defendant "had an independent obligation to comply with the ADA"); Contingent Worker Guidance at *11 (explaining that if a joint employer "honors its client's request to remove a worker from a job assignment for a discriminatory reason and replace him or her with an individual outside the worker's protected class, the firm is liable for the discriminatory discharge").

Although Vincent did not use the joint-employer label below, she nonetheless articulated the correct standard: "ATI cannot escape liability

where, as here, it was aware of PVHS's discriminatory motives for Plaintiff's desired removal but took no action to protect Plaintiff." R.74 at 32. We agree; a reasonable jury could find that ATI knew PVHS's removal request was discriminatory, yet acceded to it and took no corrective action.

As to ATI's knowledge, it is undisputed that Vincent complained to Pequette about Shade's sexism driving PVHS's removal request. *Supra* p.6. Further, Vincent adduced additional evidence, all known to Pequette, that PVHS's removal request was discriminatory: the temporal proximity between the discriminatory remarks and removal request, her history of strong performance and lack of disciplinary action, and the contrast between Turner's vague rationale for her removal and his detailed rationale for Blackmon's. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1241-42 (11th Cir. 2016) (finding statements by board members claiming they preferred men in superintendent role, made shortly before board vote, independently sufficient to establish a jury issue on sex-discrimination claim); *Wascura v. City of S. Miami*, 257 F.3d 1238, 1245 (11th Cir. 2001) ("[T]he lack of complaints or disciplinary reports in an employee's personnel file may support a finding of pretext" where the proffered reason is misconduct.); *Osram Sylvania, Inc. v. Teamsters Local Union 528,* 87

F.3d 1261, 1265 (11th Cir. 1996) ("Disparate treatment exists when similarly situated workers are treated differently even though they have committed similar acts.").

Thus, a reasonable jury could find, despite ATI's control over the removal decision, *see supra* pp.14-17, it nonetheless complied with PVHS's discriminatory request and—far from taking corrective action— failed to investigate Vincent's complaint and replaced her with a man within a week. *Supra* pp.6,11. Indeed, ATI alternately blamed her for creating problems and claimed it removed her to protect her from PVHS's discrimination, *supra* pp.6,9 —a rationale that, even if true, would *itself* have been discriminatory under Title VII. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1195 (11th Cir. 2004) (decision-maker's "shifting reasons" could allow a fact finder to find defendant's explanation "unworthy of credence"); *UAW v. Johnson Controls*, 499 U.S. 187, 199 (1991) ("[T]he absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect."). Thus, a reasonable jury could find ATI knew or should have known PVHS's removal request was discriminatory but acquiesced instead of taking corrective action within its control.

20

### B.   Vincent's forced transfer

Vincent argues that ATI also discriminated against her by forcing her to transfer to an inferior position. Initially, the district court wrongly found Vincent forfeited arguing the transfer was an adverse action. R.78 at 26. The subheadings of Vincent's summary-judgment briefing state she challenges *both* the removal and the transfer as discriminatory adverse actions, R.74 at 34,40, and she emphasizes that "ATI's [removal] decision …[was] gender *discrimination* and cutting her pay 19% *was an adverse action* …," *id.* at 41 (emphases added).

A reasonable jury could find that Vincent's transfer to a lower-paid position, and the alternatives ATI offered, are actionable because they plainly impact the "compensation, terms, [and] conditions" of Vincent's employment. *See* 42 U.S.C. § 2000e-2(a)(1). Each option would have impacted Vincent's compensation (indeed, a three-hour daily commute would rapidly accumulate gas and mileage costs), as well as the terms and conditions of her employment, given that she would either be resigning or changing, among other things, locations, supervisors, and job responsibilities. *See Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000) ("In a Title VII case, a transfer to a different position can be

'adverse' if it involves a reduction in pay, prestige or responsibility.");
*Holland v. Gee*, 677 F.3d 1047, 1058 (11th Cir. 2012) (a "reassignment with significantly different duties" fell within Title VII's scope (cleaned up)).[7]

Vincent has satisfied her summary-judgment burden under either the "convincing mosaic" or the *McDonnell Douglas* frameworks. "[T]he *McDonnell Douglas* framework is not … the *sine qua non*" for employment-discrimination plaintiffs. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). In this Court, plaintiffs may also use a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis v. City of Union City*, 934 F.3d 1169, 1178 (11th Cir. 2019). As this Court recently explained, a "convincing mosaic" is not a legal test, but "simply … recognize[s] that courts must consider the totality of a plaintiff's circumstantial evidence on summary judgment." *Yelling v. St.*

---

[7] In *Muldrow v. City of St. Louis*, 143 S. Ct. 2686 (2023) (mem.), the Supreme Court granted certiorari on the question: "Does Title VII prohibit discrimination in transfer decisions absent a separate court determination that the transfer decision caused a significant disadvantage?" *See* Order List, at 2 (S. Ct. June 30, 2023). It will hear oral argument on December 6, 2023. In the EEOC's view, *all* forced transfers fall within the scope of 42 U.S.C. § 2000e-2(a)(1). *See, e.g.*, Br. of the United States as Amicus Curiae, *Muldrow v. City of St. Louis*, No. 22-193, 2023 WL 5806264 (S. Ct. Sept. 5, 2023).

*Vincent's Health Sys.*, __ F.4th __, No. 21-10017, 2023 WL 6474713, at *11 (11th Cir. Oct. 5, 2023) (per curiam) (citation omitted). "That entire evidentiary picture may include, 'among other things,' (1) suspicious timing or ambiguous statements, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Id.* (quoting *Lewis*, 934 F.3d at 1185).

A jury could find Vincent presented a "convincing mosaic" of circumstantial evidence. To start, she has adduced sufficient evidence to "[show] that [ATI's] articulated reason [for the inferior transfer options] is false" or "not what actually motivated its conduct" and thus pretextual. *Lewis*, 934 F.3d at 1186. As explained above (pp.10-11), although ATI maintained it offered Vincent all available positions and that middle-school positions inherently involved lower salaries, the record evidence suggested otherwise.

Relatedly, a jury could find that ATI treated Blackmon, who had a record of endangering students' health, better than Vincent by providing him reasons for his removal and transfer and by offering him alternative positions at the same salary. *See supra* pp.4-5; *Lewis*, 934 F.3d at 1188 (noting evidence that similarly situated employee was offered transfer on terms not

23

offered to plaintiff). A jury could therefore disagree with the district court's conclusion that "both were offered every available position that ATI had at the time and were allowed to choose" from them. R.78 at 22. A jury could likewise find that Vincent's reluctant participation in the Hobson's choice between termination and transfer to an inferior position, *see supra* p.10-11, in no way gave her meaningful "agency" in that choice, as the district court stated. R.78 at 22.

Next, Vincent has adduced evidence of suspicious timing: an inflexible four-day deadline during which Erickson refused her inquiries and banned her from discussing the positions with school personnel. *Supra* pp.10-11; *see generally Lewis*, 934 F.3d at 1187 ("[A] jury reasonably could infer that [defendant's] sudden imposition of an apparently previously non-existent deadline … suggests a cover for discrimination.") (cleaned up). And a jury could credit Pequette's and Erickson's comments that Vincent's continuing to be "angry" and "upset" about ATI's decisions would make their relationship "toxic[]," as well as their comments that she was "dramatic" and "combative" simply because she reported inappropriate misconduct and contested a retaliatory transfer. *Supra* pp.4,9-11. Taken together, this evidence constitutes a sufficient "convincing

mosaic" to survive summary judgment.

Vincent also survives summary judgment under the *McDonnell Douglas* framework, which requires her to show she was a qualified member of a protected class who, unlike similarly situated employees outside the protected class, experienced an adverse employment action.[8] *Lewis v. City of Union City*, 918 F.3d 1213, 1220-21, 1224 (11th Cir. 2019) (en banc). If the defendant articulates a legitimate, non-discriminatory reason for its conduct, "the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination." *Id.* at 1221.

Vincent is undisputedly a member of a protected class and, as explained above (p.21-22), a jury could find her forced transfer constitutes an adverse action. She also proffered evidence that ATI offered better options to Blackmon, a male trainer with the same supervisors whose conduct, unlike Vincent's, endangered the students in his care. *See supra*

---

[8] Although Vincent did not respond to defendant's *McDonnell Douglas* argument below, she addresses it on appeal. Amended Appellant Br. at 33-42,50-55. Regardless, because the "issue … is properly before the court," this Court may apply the framework on appeal. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991).

pp.4-5; *Lewis*, 918 F.3d at 1224; *King v. Piggly Wiggly Ala. Distrib. Co.*, 929 F. Supp. 2d 1215, 1223 (N.D. Ala. 2013) (finding white drivers similarly situated to plaintiff where "misconduct of the white drivers … is not only similar in nature, but actually more serious than what [plaintiff] was found to have done").

Finally, as already discussed, a jury could find that ATI's proffered non-discriminatory reasons for offering her limited, inferior options were false and thus pretextual. *See supra* pp.10,23; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("[I]t is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." (emphasis omitted)). A reasonable jury could therefore find that ATI forced Vincent to transfer schools because of her sex.

## III.  A reasonable jury could find that ATI retaliated against Vincent by removing her from PVHS and by forcing her to transfer to an inferior position.

To establish a prima facie case of retaliation, an employee must show: "(1) that she engaged in an activity protected under Title VII; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Kidd v. Mando Am.*

*Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013). A materially adverse action "means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (cleaned up); *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (same). The burden then shifts to the employer to articulate a non-retaliatory reason for its actions; if it does so, the burden returns to the employee to show that the employer's explanation is pretextual. *Pennington v. City of Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001).

As with her discrimination claim, Vincent argues that ATI retaliated by removing her from PVHS and by forcing her to choose between resignation and transfer. The parties agree that Vincent's complaint about Shade's and PVHS's discrimination constitutes protected activity.

A.   **Vincent's removal from PVHS**

As to Vincent's removal, the parties first dispute whether there is a causal connection to Vincent's complaint for prima-facie-case purposes. To establish a causal connection, this Court holds that a plaintiff must show the decisionmaker was "aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated."

27

*Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (citation omitted).

A jury could disagree with the district court that ATI could not have known about Vincent's protected activity because it occurred after the removal decision. R.78 at 29-30. As explained *supra* p.6 n.4, a jury could find either that Vincent complained to Pequette shortly before June 5 or that the precise date of her complaint was irrelevant because ATI decided to fulfill Turner's June 5 removal request only *after* June 5.

The record also supports a causal connection between Vincent's complaint and her removal. ATI removed Vincent within days of her complaint—a fact that independently establishes prima facie causation where, as here, the employer is aware of the protected activity. *See, e.g.*, *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (holding that "very close" temporal proximity can alone satisfy causation to establish a prima facie case of retaliation) (citation omitted); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (one month sufficient).

ATI maintained that it removed Vincent for the "legitimate, non-retaliatory" reason of "acquiescence to Turner's instruction." R.56 at 28.

First, insofar as a reasonable jury could find that Pequette was aware of Vincent's complaint and knowingly acquiesced to Turner's discriminatory request, such acquiescence is not legitimate as a matter of law. *See Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 905 n.5 (11th Cir. 1990) ("An employer may not illegally discriminate simply because some third party urges or pressures him to do so."); *Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385, 389 (5th Cir. 1971) (rejecting customer preference for female flight attendants as justification for sex discrimination); *see also* 29 C.F.R. § 1604.2(a)(1)(iii) (listing among situations that do not satisfy BFOQ defense "[t]he refusal to hire an individual because of the preferences of coworkers, the employer, clients or customers" except when necessary for reasons not applicable here).

In any event, a reasonable jury could also find that ATI's acquiescence rationale was false. As described above (pp.4,9-10), Pequette justified removing Vincent due to her two "complaints" (against Woodard and Blackmon) that caused "drama" and her "combativeness" because she complained that the proposed transfer was retaliatory. A jury could thus find that ATI retaliated against Vincent *precisely because* of her history of complaints—arguably direct evidence of retaliation, but certainly sufficient

29

circumstantial evidence to demonstrate pretext. *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1190-91 (11th Cir. 1997) (statement making clear plaintiff was fired due to his participation in protected activity constituted direct evidence of retaliation). That Pequette's statements are partially committed to a contemporaneous email further strengthens their evidentiary value. *See Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1354 (11th Cir. 2022) (finding that defendant's contemporaneous words show his "actual reason for firing [plaintiff]" and that "the reasons he gave later are pretextual").

Pequette's testimony that ATI removed Vincent in part to protect her from Shade's discrimination fares no better in this context than it did for her discrimination claim. As explained above, a jury could find his reasons shifted between blaming Vincent and trying to protect her, and the latter would have been impermissible under Title VII regardless. *Supra* p.20 (citing *Cleveland*, 369 F.3d at 1195, and *Johnson Controls*, 499 U.S. at 199).

Finally, a jury could find that the temporal proximity between Vincent's complaint and her removal supports a pretext finding. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (holding that same evidence may support both prima facie case and pretext); *Patterson*, 38 F.4th at 1355 (one week sufficient).

### B. Vincent's forced transfer

Here, the dispute centers on whether Vincent's transfer was materially adverse and whether ATI's reasons for offering her limited, inferior options were pretextual. Initially, the district court erroneously found Vincent failed to challenge the transfer to the long-commute position as adverse. R.78 at 31 n.3. In her briefing below, Vincent argued that ATI retaliated against her by "only offer[ing] positions that either paid less *or required her to drive an hour and a half one way to get to work, when other more desirable positions were available.*" R.74 at 3 (emphasis added.) She also explained that her "income would have decreased due to the travel costs and expenses" due to the commute. R.74 at 15(¶50). Whether or not Vincent used the term "adverse action" in her briefing—an atextual requirement vis-à-vis Title VII in any event—she plainly argued the long-commute position would be detrimental to her, including through economic loss.

A reasonable jury could find that forcing Vincent to choose among inferior positions or face termination meets the *Burlington Northern* standard for material adversity. Insofar as Vincent's transfer caused her economic injury, it is beyond dispute that financial losses are materially

adverse. *See Burlington N.*, 548 U.S. at 73; *Monaghan*, 955 F.3d at 860.

*Burlington Northern* is equally clear that non-financial acts may be

materially adverse so long as they could dissuade a reasonable employee in

the plaintiff's position from engaging in protected activity. *See Burlington

N.*, 548 U.S. at 69 (discussing changes in work schedules and exclusion

from meetings as examples); *id.* at 70-71 (stating that reassignment to a less

prestigious and more arduous position with the same job description may

be materially adverse); *Monaghan*, 955 F.3d at 863. The circumstances

around Vincent's forced transfer meet that standard.

    The district court was also incorrect that Vincent's "choice" between

materially adverse actions shielded ATI from Title VII liability. R.78 at 31-

32. As explained above (p.24), a jury could find Vincent had no meaningful

choice, and *all* the options ATI offered her could dissuade a reasonable

worker from engaging in protected conduct. *See Hicks v. Forest Pres. Dist. of

Cook Cnty*, 677 F.3d 781, 788 (7th Cir. 2012) (choice between termination or

demotion was materially adverse and "no choice at all"); *Thibodeaux v.

CLECO Util. Grp.*, 88 F. App'x 711, 713-14 (5th Cir. 2004) (choice between

termination and demotion with pay cut was "obviously" adverse); *Montoya

v. Morgan*, No. 3:16-cv-92-MCR/EMT, 2018 WL 4701795, at *10 n.29 (N.D.

Fla. Sept. 30, 2018) (rejecting argument that plaintiff's voluntary resignation demonstrated no adverse action "because it presumes" plaintiff "was given a meaningful choice and that gender played no role … [plaintiff] had no choice but to accept one of two pay cuts.").

ATI maintained that it forced Vincent to choose among the inferior options for the "legitimate" reason that no others were available. R.56 at 35. A reasonable jury could find this rationale pretextual for the same reasons it could find Vincent's transfer was discriminatory—most of which the district court ignored. *See supra* pp.23-24,26. Accordingly, the court erred by granting summary judgment on Vincent's retaliation claims.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's grant of summary judgment on Vincent's Title VII claims and remand the case for further proceedings.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ELIZABETH E. THERAN
Assistant General Counsel

s/*Tara Patel*
TARA PATEL
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2770
Tara.Patel@EEOC.gov

October 25, 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 6494 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Eleventh Circuit Rule 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

<u>s/*Tara Patel*</u>
TARA PATEL
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2770
Tara.Patel@EEOC.gov

October 25, 2023

## CERTIFICATE OF SERVICE

I certify that on October 25, 2023, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

I further certify that I caused four paper copies of the foregoing brief to be mailed to the Clerk of Court.

_/s/ Tara Patel_
TARA PATEL
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2770
Tara.Patel@EEOC.gov

October 25, 2023