Appeal Case No.: 23-12417

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

EMILY VINCENT

Plaintiff – Appellant,

v.

ATI HOLDINGS, LLC, et al.,

Defendant – Appellee.

---

# APPEAL FROM THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION
# (Case No. 2:21-CV-00514-ACA)

---

# APPELLEE ATI HOLDINGS, LLC'S RESPONSE BRIEF

---

Janell M. Ahnert
Patrick D. Schach
Littler Mendelson, P.C.,
Shipt Tower, Suite 2300
420 20th Street North
Birmingham, AL  35203-3204
Telephone: 205.421.4700
Facsimile: 205.421.4699

Attorneys for Defendant-Appellee
ATI Holdings, LLC

*Emily Vincent v. ATI Holdings, LLC, et al.*
*No. 23-12417*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Counsel hereby certifies that the following list of persons or entities which, upon information and belief of attorneys for Defendant-Appellee ATI Holdings, LLC ("Defendant-Appellee" or "ATI"), have or may have an interest in the outcome of this case:

1.    Advanced Physical Therapy, LLC, subsidiary of Defendant-Appellee.

2.    Ahnert, Janell, Littler Mendelson, PC, Counsel for Defendant-Appellee ATI Holdings, LLC.

3.    Athletic & Therapeutic Institute of Bolingbrook, LLC, subsidiary of Defendant-Appellee.

4.    Athletic & Therapeutic Institute of Naperville, LLC, subsidiary of Defendant-Appellee.

5.    ATI Holdings Acquisition, Inc., grandparent company of Defendant-Appellee ATI Holdings, LLC.

6.    ATI Holdings, Inc., parent company of Defendant-Appellee ATI Holdings, LLC.

7.    ATI Holdings, LLC, Defendant-Appellee.

8.    ATI Holdings Missouri, LLC, subsidiary of Defendant-Appellee ATI Holdings, LLC.

C-1

9.      ATI Holdings of Alabama, LLC, subsidiary of Defendant-Appellee ATI Holdings, LLC.

10.     ATI Physical Therapy, Inc., ultimate parent company of ATI Holdings, LLC, which is a publicly traded company with stock ticker symbol ATIP.

11.     Axon, Honorable Annemarie Carney, United States District Judge for the Northern District of Alabama.

12.     Bearden, Richard A., Massey, Stotser & Nichols, PC, Counsel for Plaintiff-Appellant.

13.     Boardman, Mark S., Boardman, Carr, Petelos, Watkins, & Ogle, P.C., Counsel for Defendants Sam Shade and Michael Turner.

14.     Carr, Clay, Boardman, Carr, Petelos, Watkins, & Ogle, P.C., Counsel for Defendants Sam Shade and Michael Turner.

15.     Chubb Group Holdings, Inc.

16.     Chubb Limited, a publicly traded company with stock ticker symbol CB.

17.     Community Rehab of Iowa, LLC, subsidiary of Defendant-Appellee ATI Holdings, LLC.

18.     Federal Insurance Company.

19.     MCM Rehabilitation, LLC, subsidiary of Defendant-Appellee ATI Holdings, LLC.

20.    Physical Therapy at Dawn, LLC, subsidiary of Defendant-Appellee ATI Holdings, LLC.

21.    Proaxis Greenville, LLC, subsidiary of Defendant-Appellee ATI Holdings, LLC.

22.    Proaxis Therapy, LLC, subsidiary of Defendant-Appellee ATI Holdings, LLC.

23.    RSFH-ATI Physical Therapy, LLC, subsidiary of Defendant-Appellee ATI Holdings, LLC.

24.    Touchstone Holdco LLC, subsidiary of Defendant-Appellee ATI Holdings, LLC.

25.    Vincent, Emily, Plaintiff-Appellant.

26.    Watkins, Kate, Boardman, Carr, Petelos, Watkins, & Ogle, P.C., Counsel for Defendant Sam Shade and Michael Turner.

27.    Wilco Holdco, Inc., grandparent company of Defendant-Appellee ATI Holdings, LLC.

28.    Wilco Intermediate Holdings, Inc., grandparent company of Defendant-Appellee ATI Holdings, LLC.

29.    Wilkinson, Cynthia Forman, Wilkinson Law Firm, P.C., Counsel for Plaintiff-Appellant.

Defendant-Appellee ATI Holdings, LLC in this appeal is a company. Defendant-Appellee ATI Holdings, LLC states that more than 10% of it is

*Emily Vincent v. ATI Holdings, LLC, et al.*
*No. 23-12417*

beneficially owned by ultimate parent company, ATI Physical Therapy, Inc., which

is a publicly traded company.

## ATI HOLDINGS, LLC'S STATEMENT REGARDING ORAL ARGUMENT

ATI does not request oral argument and believes the Court can decide the issues on the briefs alone.

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS  AND CORPORATE DISCLOSURE STATEMENT ................................................................. C-1

ATI HOLDINGS, LLC'S STATEMENT REGARDING ORAL ARGUMENT .............................................................................................. i

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ....................................................................................... x

ATI'S STATEMENT OF THE ISSUES ................................................. 1

ATI'S STATEMENT OF THE CASE ...................................................... 3

    I.     PROCEDURAL HISTORY ..................................................... 3

    II.    STATEMENT OF FACTS ....................................................... 5

         A.    ATI's Relationship with Pinson Valley High School ............... 5

         B.    Vincent's Employment at ATI ................................................ 6

         C.    PVHS's Decision to Bar Vincent from its School and Vincent's Complaint .............................................................. 7

         D.    Vincent's Transfer ................................................................... 8

    III.   STATEMENT OF THE STANDARD OF REVIEW ....................... 10

SUMMARY OF ARGUMENT ............................................................... 10

ARGUMENT ........................................................................................ 13

    I.     The Court should hold Vincent abandoned argument on all issues other than those raised in her statement of issues .................... 13

    II.    The COurt should affirm Summary Judgment ON the removal claims because ati did not make or control the REMOVAL decision ................................................................................ 15

# TABLE OF CONTENTS
(CONTINUED)

PAGE(S)

A.  Under Eleventh Circuit Precedent, ATI's Lack of Control Over PVHS's Removal Decision Mandates Summary Judgment ...................................................................................15

B.  The Court Should Not Apply Vincent's Proposed Standard, but Even So, ATI's Lack of Involvement Requires Summary Judgment ..................................................18

C.  The Court Should Not Apply the Amicus's Proposed Standard, but Even if it did, ATI's Lack of Involvement in the Removal Decision Requires Summary Judgment ........21

III.  EVEN IF ATI IS CONSTRUED AS RESPONSIBLE FOR THE REMOVAL, ATI IS STILL ENTITLED TO SUMMARY JUDGMENT ...................................................................................23

A.  The Discriminatory Removal Claim Cannot Withstand *McDonnell Douglas* Scrutiny ..................................................23

1.  Vincent Did Not Establish a Prima Facie Case .............23

2.  ATI Had a Legitimate Non-Discriminatory Reason for its Conduct and Vincent Cannot Show it was Pretextual ......................................................................25

B.  Vincent Did Not Argue, and Cannot Establish, a Convincing Mosaic of Discrimination for her Discriminatory Removal Claim ...............................................31

C.  Vincent Did Not Meet Her Burden in Establishing a Mixed-Motive as to the Discriminatory Removal Claim ........32

1.  A Mixed Motive Claim Fails on the Merits .................32

2.  The District Court Properly Considered ATI's Argument on a Discriminatory Mixed Motive Theory ............................................................................35

## TABLE OF CONTENTS
(CONTINUED)

PAGE(S)

IV.   EVEN IF CONSTRUING ATI AS THE REMOVAL
      DECISION MAKER, ATI IS ENTITLED TO SUMMARY
      JUDGMENT ON VINCENT'S RETALIATORY REMOVAL
      CLAIM .................................................................................37

      A.   The Retaliatory Removal Claim Cannot Withstand
           Burden-Shifting Scrutiny .........................................37

           1.   Vincent Cannot Make a Prima Facie Case for the
                Retaliatory Removal Claim ...........................37

           2.   The Retaliatory Removal Claim Fails the
                Subsequent Steps of the Burden Shifting Test .............39

      B.   Vincent Cannot Meet the "Convincing Mosaic" Standard
           for Her Retaliatory Removal Claim .........................42

           1.   Vincent Waived Argument on a Convincing
                Mosaic Retaliatory Assignment Theory .......................42

           2.   Vincent's Convincing Mosaic Retaliatory
                Assignment Claim Fails on its Substance ....................42

V.    VINCENT'S DISCRIMINATORY AND RETALIATORY
      ASSIGNMENT CLAIMS LACK AN ADVERSE ACT..................44

      A.   Vincent Waived Argument that the Middle School
           Assignment Was a Discriminatory Act and Waived All
           but the Narrowest of Circumstances to Argue it was
           Retaliatory ...............................................................44

      B.   The Post-Removal Assignment Was Not an Adverse Act
           Under Either the Discrimination or Retaliation Standard........46

VI.   VINCENT'S DISCRIMINATORY ASSIGNMENT CLAIM
      CANNOT SURVIVE EVEN IF THE ASSIGNMENT IS
      CONSTRUED AS AN ADVERSE ACT .........................................49

## TABLE OF CONTENTS
(CONTINUED)

PAGE(S)

VII. VINCENT'S RETALIATORY ASSIGNMENT CLAIM CANNOT SURVIVE EVEN IF THE ASSIGNMENT IS CONSTRUED AS AN ADVERSE ACT .........................................53

    A. The Retaliatory Assignment Claim Fails Burden-Shifting Analysis.....................................................................53

    B. Vincent Cannot Make a Retaliatory Assignment "Convincing Mosaic" Claim.....................................................54

        1. Vincent Waived Argument that Her Assignment was Retaliatory Under a "Convincing Mosaic" Theory..........................................................................54

        2. Vincent's Retaliatory Assignment Claim Cannot Withstand Scrutiny on the Merits under a Convincing Mosaic Theory ...........................................55

CONCLUSION....................................................................56

CERTIFICATE OF COMPLIANCE.......................................58

CERTIFICATE OF SERVICE .............................................59

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. City of Montgomery*,
  569 F. App'x 769 (11th Cir. 2014) ....................................................46

*Alvarez v. Royal Atlantic Developers, Inc.*,
  610 F.3d 1253 (11th Cir. 2010) .................................................25, 26

*APA Excelsior III L.P. v. Premiere Technologies, Inc.*,
  476 F.3d 1261 (11th Cir. 2007) ...........................................21, 31, 49

*Bacon v. Frazier*,
  CV419-300, 2020 WL 624281 (S.D. Ga. Feb. 10, 2020)....................16

*In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*,
  85 F.4th 1070 (11th Cir. 2023) .........................................................14

*Bonanni Ship Supply, Inc. v. U.S.*,
  959 F.2d 1558 (11th Cir. 1992) .........................................................15

*Brooks v. County Com'n of Jefferson County, Ala.*,
  446 F.3d 1160 (11th Cir. 2006) .........................................................26

*Bryant v. Jones*,
  575 F.3d 1281 (11th Cir. 2009) .........................................................42

*Burke-Fowler v. Orange County, Fla.*,
  447 F.3d 1319 (11th Cir. 2006) (per curiam) ...................................24

*Burlington Northern and Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006)..............................................................................47

*E.E.O.C. v. Joe's Stone Crab, Inc.*,
  220 F.3d 1263 (11th Cir. 2000) .........................................................19

*EEOC v. Catastrophe Management Solutions*,
  852 F.3d 1018 (11th Cir. 2016) .........................................................15

*Evans v. Stephens*,
  407 F.3d 1272 (11th Cir. 2005) (en banc) ..................................28, 39

# TABLE OF AUTHORITIES

(CONTINUED)

Page(s)

*Gogel v. Kia Motor Manufacturing of Georgia, Inc.*,
  967 F.3d 1121 (11th Cir. 2020) (en banc) ....................................................40, 53

*Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*,
  957 F.2d 1575 (11th Cir. 1992) ........................................................................10

*Hairston v. Gainesville Sun Publ'g Co.*,
  9 F.3d 913 (11th Cir. 1993) ...............................................................................37

*Hyde v. K.B. Home, Inc.*,
  355 F. App'x 266 (11th Cir. 2009) .....................................................................46

*Lance Toland v. Phoenix Ins. Co.*,
  855 F. App'x 474 (11th Cir. 2021) ................................................................13, 35

*Lewis v. City of Union City, Georgia*,
  918 F.3d 1213 (11th Cir. 2019) (en banc) ....................................................49, 50

*Llampallas v. Mini-Circuits, Lab, Inc.*,
  163 F.3d 1236 (11th Cir. 1998) ..........................1, 15, 16, 18, 19, 20, 21, 22, 29

*Manley v. DeKalb County, Georgia*,
  587 F. App'x 507 (11th. Cir. 2014) ....................................................................38

*Maynard v. Board of the Div. of Univ. of the Fl. Dept. of Educ.*,
  342 F.3d 1281 (11th Cir. 2003) ..........................................................................24

*McQueen v. Wells Fargo Home Mortg.*,
  955 F. Supp. 2d 1256 (N.D. Ala. 2013)..............................................................16

*National R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002)............................................................................................19

*O'Hara v. University of West Florida*,
  750 F. Supp. 2d 1287 (N.D. Fla. 2010) ..............................................................38

*Polite v. Dougherty County School System*,
  314 F. App'x 180 (11th Cir. 2008)................................................................47, 48

*Quigg v. Thomas County School District*,
  814 F.3d 1227 (11th Cir. 2016) ....................................................................32, 34

# TABLE OF AUTHORITIES

(CONTINUED)

Page(s)

*Ramirez v. Secretary, U.S. Dept. of Transp.*,
   686 F.3d 1239 (11th Cir. 2012) ........................................................45

*Robinson v. Alexander City*,
   No. 3:18-cv-156-ECM, 2021 WL 4134054 (M.D. Ala. Sept. 10,
   2021) ................................................................................................36

*Rodriguez v. Secretary, U.S. Dept. of Homeland Sec.*,
   518 F. App'x 653 (11th Cir. 2013) ....................................................39

*Sapuppo v. Allstate Floridian Ins. Co.*,
   739 F.3d 678 (11th Cir. 2014) ..........................................................14

*Schiavo ex rel. Schindler v. Schiavo*,
   403 F.3d 1289 (11th Cir. 2005) ........................................................19

*Singh v. U.S. Att'y Gen.*,
   561 F.3d 1275 (11th Cir. 2009) ........................................................19

*Smith v. Lockheed-Martin Corp.*
   644 F.3d 1321 (11th Cir. 2011) ........................................................32

*St. Mary's Honor Center v. Hicks*,
   509 U.S. 502 (1993)..........................................................................50

*Stanley v. City of Sanford, Florida*,
   83 F.4th 1333 (11th Cir. 2023) ........................................................21

*Texas Dept. of Community Affairs v. Burdine*,
   450 U.S. 248, 252-253 (1981) ..........................................................23

*Thomas v. CVS/Pharmacy*,
   336 F. App'x 913 (11th Cir. 2009) ....................................................38

*Tolar v. Bradley Arant Boult Commings*,
   997 F.3d 1280 (11th Cir. 2021) ........................................................16

*University of Texas Southwestern Med. Center v. Nassar*,
   570 U.S. 338 (2013)..........................................................................37

## TABLE OF AUTHORITIES
(CONTINUED)

Page(s)

*Watson v. Adecco Employment Servs., Inc.*,
   252 F. Supp.2d 1347 (M.D. Fla. 2003)........................................................22, 25

*Williams v. Florida Dept. of Corrections*,
   2011 WL 1085030 (N.D. Fla. Mar. 22, 2011)...................................................48

*Yelling v. St. Vincent's Health System*,
   82 F.4th 1329 (11th Cir. 2023) .............................................................34, 42, 54

**Statutes**

Title VII of the Civil Rights Act of 1964...................................................................3

**Other Authorities**

11th Cir. R. 28-1 .......................................................................................................13

11th Cir. R. 28-1(h).....................................................................................................13

Fed. R. App. P. 28 .......................................................................................................13

Fed. R. App. P. 28(a)(5)...............................................................................................13

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as this is an appeal from a final judgment of the United States District Court for the Northern District of Alabama. The district court had subject matter jurisdiction over the matter under 28 U.S.C. § 1331.

## ATI'S STATEMENT OF THE ISSUES

(1)    Whether Vincent's Amended Brief fails to meet the requirements for adequate briefing and whether this forecloses her ability to raise certain substantive issues.

(2)    Whether Eleventh Circuit precedent in *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236 (11th Cir. 1998), requires a finding of control over the adverse employment decision on which the Title VII suit is based.

(3)    Whether ATI's lack of control over the removal decision made by Pinson Valley High School (PVHS) requires summary judgment in its favor.

(4)    Whether the district court correctly held, assuming *arguendo* that ATI controlled the removal, Vincent failed to raise a genuine issue of material fact as to her gender discrimination claim challenging her removal from PVHS.

(5)    Whether the district court correctly held, assuming *arguendo* that ATI controlled the removal, Vincent failed to raise a genuine issue of material fact as to her retaliation claim challenging her removal from PVHS.

(6)    Whether the district court correctly held Vincent did not establish an adverse act as to either her discrimination or retaliation reassignment claims.

(7)    Whether, assuming *arguendo* that the assignment was an adverse action, the district court correctly held Vincent failed to raise a genuine issue of

material fact as to her gender discrimination claim challenging Vincent's post-removal assignment to Pelham Middle School.

(8)   Whether the district court correctly held, assuming *arguendo* that ATI controlled the removal decision, Vincent cannot raise a genuine issue of material fact as to her retaliation claim challenging Vincent's post-removal assignment.

(9)   Whether Vincent waived various arguments and theories by not raising them at the district court.

(10)   Whether the district court correctly considered ATI's argument on a mixed-motive discrimination theory challenging the removal when ATI did not include argument on this in its motion and Vincent first raised this theory in her response.

## ATI'S STATEMENT OF THE CASE

### I.    PROCEDURAL HISTORY

Appellant Emily Vincent worked for ATI as an Athletic Trainer, stationed at PVHS, a school operated by co-defendant Jefferson County Board of Education. [*See* R. 1]. Michael Turner is principal and Sam Shade was the football coach at PVHS, employed by the board of education. [*See id*.].

Vincent filed her Complaint in the United States District Court for the Northern District of Alabama (Southern Division) on April 12, 2021 asserting claims against Appellee ATI, the Jefferson County Board of Education, Turner and Shade. [*See id.*]. The claims against ATI include alleged gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. [*See id.*].

After Vincent amended her Complaint, [R. 6, 7], ATI moved to dismiss. [R. 13]. On January 11, 2022, the district court denied the motion, holding ATI's arguments were premature. [R. 35].

After discovery closed, ATI moved for summary judgment. [R. 55-56]. On June 22, 2023, the district court issued a Memorandum Opinion granting summary judgment in ATI's favor. [R. 78]. In reaching its conclusion, the district court rejected ATI's argument on the issue of control over the removal decision, finding a factual issue as to who controlled Vincent's removal from her PVHS assignment. [R. 78 at 12-15]. Nonetheless, the district court granted summary judgment to ATI

on claims based on other grounds. [R. 78]. The district court held that Vincent failed to establish: (1) a convincing mosaic of circumstantial evidence from which a trier of fact could infer discriminatory intent; (2) that her gender was a motivating factor for any of ATI's actions; or (3) that ATI's reason for her removal and reassignment was a pretext for retaliation. [R. 78 at 2].

The district court analyzed Vincent's claim of gender discrimination based on her removal from PVHS under convincing mosaic and mixed motive frameworks asserted by Vincent, finding that she met neither standard. [R. 78 at 15-21, 24-25].

As to Vincent's claim that her post-removal assignment to another school was discriminatory, the district court held Vincent did not argue, and therefore did not preserve, the issue of whether the assignment was an adverse act. [R. 78 at 26, 31]. The district court also held Vincent failed to establish either a convincing mosaic or mixed motive based on the assignment decision. [R. 78 at 21-22, 25-27].

The district court also granted summary judgment as to Vincent's retaliation claims, holding there was no causal connection because the protected conduct occurred after the removal decision. [R. 78 at 30]. The district court held further, even if Vincent could have established a *prima facie* case, her retaliation claim did not survive the subsequent steps of the burden-shifting test. [R. 78 at 32-33].

In addition, the district court rejected Vincent's retaliatory assignment claim, holding she failed to establish her post-removal assignment was an adverse act, [R. 78 at 30-31], and even if she had, the claim cannot survive the subsequent steps of the burden-shifting test. [R. 78 at 32-33].

Finally, the district court held ATI did not waive its argument against mixed motive because Vincent first raised this theory in her summary judgment response. [R. 78 at 23-24].

The district court entered a Final Order on July 7, 2023, dismissing Vincent's remaining state law claims against Turner and Shade[1] without prejudice. [R. 81]. This appeal followed.

## II.    STATEMENT OF FACTS

### A.    ATI's Relationship with Pinson Valley High School

ATI is a rehabilitation services provider specializing in several fields including sports medicine. [R. 54-1 at 2-3 (¶ 3)].  In this regard, ATI provides athletic trainers to local schools to assist with their sports teams and athletes. [R. 54-1 at 3 (¶ 4)].

ATI entered into such a relationship with PVHS in fall 2017, and contracted in September 2019 to provide athletic trainers to PVHS's sports programs. [R. 54-1 at 3 (¶¶ 5, 7-8), 9-15]. Importantly, the contract provided that ATI could only identify

---

[1] Vincent and Co-Defendant Jefferson County Board of Education entered a joint stipulation of dismissal as to the claims against it. [R. 55, 59].

and provide athletic trainers to perform such services "*with the approval of the School.*" [R. 54-1 at 9-15 (emphasis added)]. That is, ATI could not place anyone on campus at PVHS unless it had school approval. [*Id.*]. The contract—including the school's right of refusal—remained in place during through summer 2020. [R. 54-1 at 3 (¶¶ 7-8), 9-15].

### B.    Vincent's Employment at ATI

Vincent began working for ATI as an athletic trainer in 2017. [R. 54-3 at 36 (135:14-20)]. She was stationed as one of two athletic trainers assigned to PVHS. [R. 54-3 at 7, 37 (20:18-23, 138:8-139:15)]. In fall 2019, ATI's Dave Bush directly supervised Vincent and Heath Blackmon, the second PVHS athletic trainer. [R. 54-3 at 47-48, 77 (180:17-181:11, 181:21-182:5, 300:18-23); R. 54-2 at 3 (¶ 4)]. Jason Pequette, ATI's sports medicine director was also one of Vincent's direct supervisors. [R. 54-1 at 3 (¶ 6)].

Michael Turner was PVHS principal during the entirety of Vincent's assignment there. [R. 54-5 at 5 (12:4-12)]. Vincent considered Turner and the school's athletic director to be her onsite supervisors. [R. 54-3 at 76 (295:6-9)].

On March 18, 2020, Turner emailed ATI regarding his decision to bar Blackmon, a male, from working at PVHS. [R. 54-5 at 38 (143:1-144:1), R. 54-8 at 57]. Pursuant to Turner's direction, ATI transferred Blackmon. [R. 54-12 at 19 (66:10-20)]. Pequette did not conduct an extensive inquiry of Turner's reasoning; he

simply complied because PVHS would not permit Blackmon to return to an assignment at the school. [R. 54-1 at 4 (¶¶ 9-11)]. Since ATI could not send Blackmon back to PVHS, it informed Blackmon of the open positions in the area and transferred him to one he chose. [R. 54-1 at 4 (¶ 10)].

### C. PVHS's Decision to Bar Vincent from its School and Vincent's Complaint

Vincent alleges Turner made her assistant athletic director at PVHS in May 2020, [R. 54-3 at 22 (80:13-81:22)], a position unrelated to Vincent's ATI athletic training assignment or her work for ATI. On June 3, 2020, Turner met with Vincent because she "was telling coaches and secretaries in the building that she was the assistant athletic director" so he "explained to Mrs. Vincent that she was not the assistant athletic director." [R. 54-8 at 67].

On June 5, 2020, Turner instructed Pequette that Vincent could not continue her ATI athletic trainer assignment at PVHS. [R. 54-5 at 61-62 (236:23-238:1)]. Turner, not ATI, made the decision to bar Vincent from PVHS. [R. 54-5 at 80 (312:12-19)]. He admitted it was his decision [*Id.*], and Vincent agreed, testifying it was "Mr. Turner's call to make the decision." [R. 54-3 at 33-34 (125:3-126:19)].

Pursuant to Turner's direction, three PVHS coaches, including Coach Shade, went to Vincent's office on June 5 and instructed her to leave her keys when she left that day. [R. 54-3 at 55 (213:10-214:5)]. Shade also informed Vincent on June 5 she could not come back to PVHS unless accompanied by police escort. [R. 54-3 at 56

7

(216:1-217:9)]. After this interaction it was "very clear" to Vincent she could not return to PVHS as an ATI athletic trainer. [R. 54-3 at 56 (214:19-215:12)]. Turner admitted had ATI tried to resend Vincent to PVHS after his removal decision, Turner would not have permitted her to perform athletic trainer duties there. [R. 54-5 at 80-81 (312:21-313:3)].

After being instructed of her removal from PVHS, Vincent alleges she told Pequette she thought the removal decision was based on PVHS Coach Shade's desire to not work with a female athletic trainer and also about a rumor she heard that Shade allegedly made discriminatory comments to an assistant coach. [R. 54-3 at 59-60, 74 (229:17-231:15, 286:11-287:9)]. Vincent did not hear these comments allegedly made by Shade. [R. 54-3 at 59-60 (229:17-231:15)].

On June 8, three days after Vincent's removal by PVHS, Turner sent Pequette a letter memorializing his reasoning for his decision, including feedback received from PVHS's coaches about inappropriate things Vincent had said and Vincent's improper attempts to assert authority outside of her athletic trainer duties. [R. 54-5 at 66, 80 (311:22-312:11), R. 54-8 at 66].

### D.    Vincent's Transfer

Given that ATI could not return Vincent to PVHS per Turner's direction, Pequette informed Vincent of the currently open athletic trainer positions in the central Alabama area and asked Vincent to select among them. [R. 54-1 at 5-6 (¶¶

8

17-21)]. Laura Erickson, ATI HR Business Partner, emailed Vincent, providing information on the available options for reassignment: (1) a split assignment at Oakman High School and Carbon Hill High School in Walker County, (2) Pelham Middle School, and (3) Oak Mountain Middle School. [R. 54-3 at 58 (225:1-15), R. 54-4 at 27-28]. These three options were the only available athletic trainer assignments ATI had at area schools at the time. [R. 54-1 at 5-6 (¶¶ 17-20)].

The compensation associated with option one—the split between the two high schools—was the same as what Vincent's pay had been while assigned to PVHS. [R. 54-3 at 58 (225:1-15), R. 54-4 at 27-28; R. 54-1 at 6 (¶ 21)]. The two middle school position pay rates were lower. [R. 54-1 at 6 (¶ 22)].

On June 15, Vincent selected and accepted the Pelham Middle School assignment. [R. 54-4 at 21]. Weeks later, on July 14, Vincent resigned because she found employment elsewhere with higher compensation. [R. 54-3 at 31 (115:12-22)].

After Vincent's departure from PVHS on June 5, the school had no athletic trainers. [R. 54-2 at 3 (¶ 7)]. Blackmon's replacement had not yet begun working at PVHS, though Bush had already identified male Alex Gee as the next athletic trainer to assign. [R. 54-2 at 3 (¶¶ 5-8)]. Bush texted Turner on June 5 (Vincent's last day at PVHS) that he had identified Gee to replace Blackmon *before* Bush had any knowledge of Turner's decision to remove Vincent. [*Id*.]. On June 22, ATI

9

transferred Taylor Cole, a female, to the open PVHS position resulting from Vincent's transfer. [R. 54-1 at 7 (¶ 24), 17].

## III.    STATEMENT OF THE STANDARD OF REVIEW

"The district court's grant of summary judgment is subject to *de novo* review by this court. Summary judgment is appropriate where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law." *Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller*, 957 F.2d 1575, 1578 (11th Cir. 1992) (internal citation omitted).

## SUMMARY OF ARGUMENT

Vincent's Amended Brief suffers various flaws unrelated to the merits. Such flaws include a much narrower statement of the issues as compared to the arguments in her brief. Moreover, Vincent also waived all arguments and issues not presented to the district court.

As to the merits, ATI cannot be liable for the removal decision—regardless of whether considered in a discrimination or retaliation context—because it did not make it. It is undisputed that PVHS Principal Turner made this decision. His subordinates confiscated Vincent's keys at his instruction and informed Vincent she could not return without a police escort. ATI was not involved in any of those events. Turner stated plainly that he would not have permitted Vincent to continue at PVHS

had ATI returned Vincent against his directive. ATI cannot be liable for a decision it did not control and could not change.

Second, even if ATI is construed as the decision-maker, the evidence fails to establish that gender motivated any action taken by ATI. This is accurate whether the discriminatory removal claim is analyzed under the *McDonnell Douglas* burden-shifting framework, the convincing mosaic body of law, or under a mixed motive theory. ATI treated Vincent the same way it treated a male peer, Blackmon, who like Vincent, was the subject of a removal directive made by Turner. Just as it did with Blackmon, ATI offered Vincent all other available area athletic trainer positions. For this reason and others, the removal discrimination claim fails.

Third, and again assuming *arguendo* ATI made the removal decision, the retaliatory removal claim fails for similar reasons. Regardless of whether analyzed under traditional burden-shifting analysis or under a convincing mosaic prism, there is no evidence to establish protected conduct motivated ATI. A fatal flaw for this claim is the undisputed fact that Vincent's protected conduct occurred *after* the removal decision.

Fourth, ATI's post-removal transfer of Vincent was not an adverse employment action considering the context. ATI *could not* send Vincent to her former work assignment at PVHS. Providing Vincent another assignment at another school—indeed, at *any* school—could not be adverse when the alternative was not

11

assigning Vincent anywhere. Beyond that, as the district court correctly held, the assignment was not an adverse act attributable to ATI because *Vincent herself* chose her reassignment. She voluntarily chose the lower compensation and duties associated with the new assignment to a middle school. Vincent could have selected another high school assignment with the same compensation, but she did not.

Fifth, even if considered an adverse act, the assignment decision is free from evidence suggesting ATI acted with a discriminatory or retaliatory intent. Again, ATI treated Vincent exactly as it did Blackmon, who had not engaged in protected conduct. ATI offered Vincent the available positions in the area that were open at the time and permitted her to select one.

Sixth, the district court did not impermissibly raise or unilaterally rule to defeat Vincent's mixed motive discriminatory removal claim. The fact that ATI did not argue this theory in its initial summary judgment motion does not mean it was waived. As the district court recognized, ATI had no notice that Vincent was pursuing a mixed motive theory until Vincent argued it in her summary judgment response. In any event, the convincing mosaic theory was fully briefed prior to the district court's rejection of it, and the district court did not err in reaching the merits.

The district court was correct in granting ATI's summary judgment as to all of Vincent's claims.  The Court should affirm.

## ARGUMENT

## I. THE COURT SHOULD HOLD VINCENT ABANDONED ARGUMENT ON ALL ISSUES OTHER THAN THOSE RAISED IN HER STATEMENT OF ISSUES

The Federal Rules of Appellate Procedure and Local Rules require briefs to include various items. *See* Fed. R. App. P. 28; 11th Cir. R. 28-1. Here, Vincent's brief does not satisfy the procedural briefing rules in multiple respects.

First, appellants are required to include "a statement of the issues presented for appeal." Fed. R. App. P. 28(a)(5); *see also* 11th Cir. R. 28-1(h). Vincent's statement of the issues contains only three issues, two addressing her gender discrimination claim and one of which outlines the district court's alleged unilateral advancement of argument. [Doc. 25 at 10]. Vincent's statement of the issues does not include any reference to a retaliation claim, responsibility for the removal decision, or—as it concerns her discrimination claim—any legal theory other than the "motivating factor" theory. [*See id*. Doc. 25 at 43 *et seq*.].

Moreover, proper briefing requires fully identifying and then making clear arguments, not burying potential arguments within other sections. "When . . . a party fails to 'devote a discrete, substantial portion' of his appellate brief to an issue and, instead, 'buries' the issue within other arguments, the issue is deemed abandoned." *Lance Toland v. Phoenix Ins. Co.*, 855 F. App'x 474, n. 6 (11th Cir. 2021).

13

Vincent's briefing failures should result in a finding of abandonment of every issue other than those identified in her statement of issues. In *Sapuppo v. Allstate Floridian Ins. Co.*, a panel of this Court considered an instance where an appellant identified only two issues in its statement of the issues. 739 F.3d 678, 680 (11th Cir. 2014). The *Sapuppo* Court held the appellant "abandoned any argument [on] the additional reasons the district court" relied on in entering summary judgment because those alternate reasons were not identified in the statement of issues. *Id*.

Here, the statement of issues is limited and thus the issues on appeal are far from apparent. As in *Sapuppo*, this Court should hold Vincent abandoned any argument other than those identified in the statement of the issues, limiting Vincent to arguing a mixed motive discrimination claim and advancing an argument that the district court improperly considered mixed motive argument. *See In re Blue Cross Blue Shield Antitrust Litig. MDL 2406*, 85 F.4th 1070, 1092 (11th Cir. 2023) ("We will not consider issues that a party fails to brief adequately. 'A party fails to adequately brief a claim when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims.'").

14

## II.   THE COURT SHOULD AFFIRM SUMMARY JUDGMENT ON THE REMOVAL CLAIMS BECAUSE ATI DID NOT MAKE OR CONTROL THE REMOVAL DECISION

### A.   Under Eleventh Circuit Precedent, ATI's Lack of Control Over PVHS's Removal Decision Mandates Summary Judgment

It strains fundamental principles of fairness to conclude ATI could be legally responsible for the decision to remove Vincent from PVHS when all agree that ATI did not make the decision.[2]  "To prevail on a disparate treatment claim, a Title VII plaintiff must demonstrate that an employer intentionally discriminated against her on the basis of a protected characteristic." *EEOC v. Catastrophe Management Solutions*, 852 F.3d 1018, 1024 (11th Cir. 2016). Since ATI did not make or control the removal decision, ATI could not have intentionally discriminated against and/or retaliated against Vincent.

As PVHS and ATI both shared varying degrees of involvement in Vincent's employment, each entity bears responsibility for its own employment decisions.[3]  In *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236 (11th Cir. 1998), the Court considered whether one entity could be liable for the challenged adverse

---

[2] The district court found a genuine issue of material fact as to whether ATI made the removal decision. [R. 78 at 14]. Nonetheless, the Court should affirm summary judgment based on ATI's lack of control in the removal decision. "[Courts of Appeals] may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court." *Bonanni Ship Supply, Inc. v. U.S.*, 959 F.2d 1558, 1561 (11th Cir. 1992).

[3] Counter to Vincent and the amicus's suggestions, ATI is not contesting it was an "employer" for Vincent. But that alone does not equate to liability. Employers are not liable for another employer's decisions and conduct when they do not control them.

employment decision of another. The Court held the required analysis was "the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." *Id.* at 1244-45 (emphasis added); *see also Tolar v. Bradley Arant Boult Commings*, 997 F.3d 1280, 1300 (11th Cir. 2021) ("Nor can [defendant] be liable under Title VII on a joint employer theory . . . because there are not facts to suggest that [defendant] exercised any control . . . .").

The *Llampallas* Court held one entity cannot be held liable for the decision of the other when the first entity had "nothing to do with that [challenged] decision." 163 F.3d at 1245. This reasoning is consistent with well-reasoned district court opinions in this Circuit addressing the issue. *Bacon v. Frazier*, CV419-300, 2020 WL 624281, at *3 (S.D. Ga. Feb. 10, 2020) ("Courts have recognized that, in a joint-employer situation—such as when a staffing agency places an employee with a client company—each individual employer only bears liability for discriminatory acts within its control.")(collecting cases); *McQueen v. Wells Fargo Home Mortg.*, 955 F. Supp. 2d 1256, 1272 (N.D. Ala. 2013) (holding plaintiff could not maintain her claims against one entity because "the evidence shows that only [the other entity] had anything to do with the plaintiff's termination").

Applying the *Llampallas* standard here: there is no genuine issue of material fact that ATI neither made nor had control over the decision to remove Vincent from her athletic trainer assignment at PVHS. The decision was made by PVHS Principal

Turner. On this fact there is no dispute. [R. 54-3 at 34 (126:16-19); R. 54-5 at 80 (312:12-16); R. 54-12 at 13 (43:9-14)].

In response to another party's summary judgment motion, Vincent admitted Turner made the challenged removal decision: "ATI did not make the decision to reassign Ms. Vincent; ATI was instructed to do so by Mr. Turner." [R. 66 at 8 (¶ 42)]. Vincent maintained in the same brief: "[o]f course, it was Turner himself, following Shade's complaints about Ms. Vincent, who directed Ms. Vincent's employer to end her assignment at [PVHS]." [R. 66 at 26].

In addition, the events surrounding Vincent's removal demonstrate Turner's decision was *the cause* of the removal. Three PVHS employees visited Vincent on June 5 and told her she had to turn her PVHS keys in by the end of the day. [R. 54-3 at 55 (213:10-214:5)]. Vincent understood this meant she was not permitted to return. [R. 54-3 at 56 (214:19-215:12)]. A PVHS employee told Vincent she could not return to PVHS unless she was accompanied by police. [R. 54-3 at 56 (216:1-217:9)]. These events occurred on June 5, three days before Turner's letter to Pequette memorializing the reasons for his already-effectuated decision.[4] [R. 54-5 at 80 (311:22-312:11), R. 54-8 at 66]. Turner was unequivocal that, had ATI attempted

---

[4] In finding a genuine issue of material fact on this issue, the district court focused on the wording in the June 8 letter from Turner, [R. 78 at 14], but by this time, the adverse act—the removal—had already occurred. On June 5, *before Turner's letter*, Turner's PVHS employees confiscated Vincent's keys and told her she could not return to campus without a police escort.

to send Vincent back to PVHS, he would not have permitted her to work there. [R. 54-5 at 80-81 (312:21-313:3)].

Under *Llampallas*, Turner's decision to bar Vincent from PVHS, and the fact that ATI had no involvement in or control over the decision, means ATI cannot be liable for the removal decision.

## B.    The Court Should Not Apply Vincent's Proposed Standard, but Even So, ATI's Lack of Involvement Requires Summary Judgment

In her brief, Vincent did not address the removal decision, and ATI's remoteness from it, under *Llampallas* or any other Eleventh Circuit precedent. [*See* Doc. 25 at 30-32]. Instead, she focuses her argument on the impact of purported EEOC Guidance and the impact of the ATI-PVHS contract. Neither argument defeats summary judgment.

Vincent alleges, while citing an unrelated statute regarding disparate impact (which is not applicable in this case) and without identifying the particular Enforcement Guidance upon which she relies, the EEOC Guidance provides that a staffing company can be liable for honoring a client's discriminatory assignment request. [Doc. 25 at 23-25]. This "honoring another's discriminatory request" standard is separate and distinct from the "control" standard set forth in *Llampallas*.

First, Vincent did not tether her argument seeking to apply this standard to any authority. [*See id*.]. As a result, she cannot prevail on such an argument now. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("'[A]n

18

appellant's brief must include an argument containing appellant's contentions . . . with citations to the authorities,'" and "stating an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes . . . considering the issue on appeal."). As such, the Court should reject it out of hand.

Further, even if the Court were to consider the argument, and assuming the Guidance stands for the proposition which Vincent claims it does, the Guidance has no value as binding precedent and is entitled to no deference. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 n. 6 (2002) (holding EEOC Enforcement Guidance only has influence "to the extent that [it] ha[s] the 'power to persuade'"). Indeed, because this argument is inconsistent with binding *Llampallas* precedent, which focuses on control over the actual decision, it should be rejected. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1292 (11th Cir. 2005) ("'Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled . . . .'").

Besides being inconsistent with *Llampallas,* Vincent's "honor another's decision" standard is at odds with Title VII. Disparate treatment is about *intentional* discriminatory or retaliatory acts. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273 (11th Cir. 2000) ("[D]isparate treatment claims require proof of discriminatory intent."). One entity who recognizes the effect of another entity's decision, even if

19

that decision was discriminatory or retaliatory, could not have itself made an intentionally discriminatory or retaliatory decision effectuating the prior act. This principle underlies *Llampallas,* which assigns liability to the entity which controlled and thus made the challenged decision.

Even if applying the "honor another's decision" standard asserted by Vincent, though, her argument is still unavailing. ATI had nothing to do with Turner's decision other than recognize it had been made. On June 5, Turner and PVHS personnel had already ended Vincent's assignment. They took Vincent's keys and told her not to return unless accompanied by police. [R. 54-3 at 56 (216:1-217:9)]. There was nothing for ATI to "honor" or not.  The removal decision had already been made and carried out by PVHS employees.

Nor did ATI have reason to think the decision made by PVHS was discriminatory. Vincent admitted she did not speak with Pequette about her allegations regarding Shade's alleged discriminatory preferences until *after* Vincent had already learned of her removal and been barred from the school. [R. 54-3 at 56-57,  59-60  (217:23-218:6,  219:10-20,  219:23-220:13,  220:23-221:4,  229:22-231:15)].

Even if using Vincent's proposed standard, ATI cannot be responsible for PVHS's removal decision.  Counter to Vincent's argument, ATI is not attempting to use the contract as a means of escaping liability by arguing ATI contracted away its

Title VII obligations. The import of the contract is merely that PVHS maintained control over who had access to its property, including its contractual right to bar athletic trainers, including Vincent. [R. 54-1 at 9-15].

### C.   The Court Should Not Apply the Amicus's Proposed Standard, but Even if it did, ATI's Lack of Involvement in the Removal Decision Requires Summary Judgment

The amicus's argument in favor of a third standard is also misguided and unsupported by any Eleventh Circuit authority. The amicus argues the Court should eschew *Llampallas* and its focus on liability connected to control. [Doc. 20 at 26-29]. The Court should instead, according to the amicus, create a standard that imposes liability if a joint employer "participates in" the discriminatory decision of a joint-employer or knows of the discriminatory nature of the decision "but fails to take corrective measures within its control." [Doc. 20 at 27].

Vincent did not advance this argument for the application of a third standard at the district court or in her brief.[5] As such, the Court should not consider it now. *See Stanley v. City of Sanford, Florida*, 83 F.4th 1333, 1344 (11th Cir. 2023) ("We will not consider arguments raised only by amici."); *APA Excelsior III L.P. v.*

---

[5] The closest Vincent comes in her brief is the inclusion of a purported case quote regarding entity liability for non-employees' decisions, but there is no citation to the principal opinion or material analysis of its application to this case. [Doc. 25 at 25].

*Premiere Technologies, Inc.*, 476 F.3d 1261, 1270 (11th Cir. 2007) (holding parties

abandon arguments "[b]y not clearing raising [them] in their initial brief").[6]

Expansion of the control standard to include this "participates in" or "fail to

take corrective measures" standard is counter to *Llampallas*, which focuses on

control and explicitly held entities are not liable for others' decisions when those

entities were not involved in actually making the challenged decision.  163 F.3d at

1245.  "Participating in" a decision suggests something less than "controlling" a

decision, and one cannot intentionally discriminate—the focus of disparate treatment

claims—merely by participating in another's intentional decision. Nor does one

control an already-made decision by not attempting to remedy it. Imposing this

standard would create liability for entities that did not make an intentional decision

and instead impose affirmative duties on businesses to police and scrutinize every

personnel decision made by other entities with which it does business. Such a result

is neither practical nor contemplated by Title VII.  "[A] private company[] cannot

force its client, another private company, not to discriminate or run its business in a

certain manner." *See Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp.2d

1347, 1357-58 (M.D. Fla. 2003).

Even if the Court were to apply the amicus's proposed standard, however,

there is still no genuine issue of material fact. Again, Turner, Vincent, and Pequette

---

[6] The Court should apply this same rule to the amicus's other arguments not advanced by Vincent.

all admitted Turner made the removal decision. [R. 54-3 at 34 (126:16-19); R. 54-5 at 80 (312:12-16); R. 54-12 at 13 (43:9-14)]. ATI did not participate in it. Nor did it have the ability to make any corrective measures. Turner was clear had ATI sent Vincent back to PVHS, he would not have permitted her access to the school. [R. 54-5 at 80-81 (312:21-313:3)].

ATI did not have "corrective measures within its control." As a result, even if applying the amicus's proposed standard, ATI is still entitled to summary judgment.

## III.    EVEN IF ATI IS CONSTRUED AS RESPONSIBLE FOR THE REMOVAL, ATI IS STILL ENTITLED TO SUMMARY JUDGMENT

### A.    The Discriminatory Removal Claim Cannot Withstand *McDonnell Douglas* Scrutiny

Even if ATI is held responsible for PVHS's removal decision, ATI is still entitled to summary judgment as Vincent fails to satisfy the *McDonnell Douglas* burden shifting test.[7]

### 1.    *Vincent Did Not Establish a Prima Facie Case*

An employee bears the first burden; she must offer evidence of a *prima facie* case raising an inference of possible discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981). To establish a *prima facie* case for disparate treatment in a discrimination case, the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment

---

[7] Vincent did not make this argument to the district court and, as a result, waived it.

action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job. *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (per curiam). An alternate method for meeting the third element is for an employee to show she "was replaced by a person outside h[er] protected class." *Maynard v. Board of the Div. of Univ. of the Fl. Dept. of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003).

Vincent cannot establish the third requirement of showing a replacement outside her protected class. Female Taylor Cole replaced her at PVHS. [R. 54-1 at 7 (¶ 24), 17]. Vincent claims male Alex Gee replaced her, but examining the evidence shows otherwise. Bush identified Gee as Blackmon's replacement *before* ever learning that Turner was removing Vincent. [R. 54-2 at 3 (¶¶ 5-6)]. Gee was Blackmon's replacement at PVHS, he was not Vincent's replacement.

In a text to Turner, Bush identified Gee as Blackmon's replacement: "Alex Gee comes to us highly recommended . . . . I would like to bring Alex out on Monday morning to assume the role . . . ." [R. 54-2 at 6]. As supported by the contemporaneous communication, Bush had already identified Gee as Blackmon's replacement before Vincent's removal. As a result, Gee could not have been Vincent's replacement. Since Vincent did not identify a male replacement, she did not satisfy her *prima facie* burden.

24

### 2. *ATI Had a Legitimate Non-Discriminatory Reason for its Conduct and Vincent Cannot Show it was Pretextual*

Even if Vincent establishes a *prima facie* case, Vincent's discriminatory removal claim remains flawed. If an employee makes out a *prima facie* case, a presumption of discrimination arises that the "employer can rebut . . . by articulating one or more legitimate non-discriminatory reasons for its action." *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).

ATI had a legitimate non-discriminatory reason for recognizing the removal decision made by Turner at PVHS. Turner informed Pequette PVHS did not want Vincent to perform athletic trainer services any longer, in part, because Vincent had interpersonal issues with PVHS's staff and was acting in areas outside her authority. [R. 54-5 at 80 (311:22-312:11), R. 54-8 at 66]. ATI's contract with PVHS gave PVHS the right to make such a demand. Honoring a client's staffing request is a legitimate nondiscriminatory reason for an employment action. *Cf. Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp.2d 1347, 1357-58 (M.D. Fla. 2003) ("[A] private company[] cannot force its client, another private company, not to discriminate or run its business in a certain manner.").

Once an employer meets this low bar of providing a legitimate non-discriminatory reason, the burden shifts back to the employee to provide evidence showing the proffered reason is pretextual. "To show pretext, [a plaintiff] must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could find them unworthy of credence.'" *Alvarez*, 610 F.3d at 1265. "A reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Brooks v. County Com'n of Jefferson County, Ala*., 446 F.3d 1160, 1163 (11th Cir. 2006).

In an effort to establish pretext, Vincent identifies various items, none of which are adequate evidence demonstrating pretext and gender-based motivation by ATI, whether considered independently or together.  Vincent cites (1) her prior work performance, (2) Turner allegedly placing her in a PVHS assistant athletic trainer position and then promptly removing her from it, (3) Pequette's alleged acknowledgment that Vincent had complained to her of gender discrimination prior to removal, (4) Pequette's post-June 5 correspondence regarding Vincent's prior work, (5) Pequette's comments about how he would handle a facially racially discriminatory request from a client, (6) Gee's subsequent assignment to PVHS, and (7) the fact of the transfer itself.

First, ATI does not contest the general quality of Vincent's work performance. Indeed, it never disciplined her based on PVHS's request and assigned her to another school after PVHS removed her. [R. 54-1 at 5 (¶¶ 15-16)]. Regardless of ATI's view of Vincent's performance, PVHS would not permit Vincent to work there anymore.

As such, ATI's independent view of Vincent's performance provides no inference of gender discrimination.

Similarly, Vincent's claimed short-term stint as an assistant athletic director at PVHS in the weeks prior to the removal provides no inference of supposed gender motivation. If anything, it supports the legitimacy of Turner's conclusion that Vincent was acting outside of her authority as a basis for his removal directive.

Vincent cherry picks Pequette's testimony in an attempt to show he was aware of Vincent's gender-based complaints before her removal on June 5. [R. 54-12 at 25 (91:9-92:2)]. However, his full testimony establishes that Pequette understood "removal" not as when the decision was made by PVHS, but when ATI informed Vincent of other open assignments, which occurred several days *after* the June 5 removal by PVHS of Vincent from the school:

Q:     . . . Do you know the day that Ms. Vincent told you that she felt like she was being discriminated against because of her gender?

[Objection]

Pequette:     I don't recall the specific day.

Q:     Okay. But that was before she was removed from Pinson Valley, right?

[Objection]

Pequette:     It was.

Q:    Well, who told Ms. Vincent she was going to be removed from Pinson Valley?

Pequette:    I believe that was on a conversation Laura Erickson and I had on a phone call with [Vincent] and we gave her the options of the other schools. [R. 54-12 at 25 (91:9-92:2)].

When read in full context, it is clear Pequette equated "removal" to ATI's later communication with Vincent regarding transfer options, a communication that occurred on June 11, *after* Turner removed Vincent from PVHS on June 5. [R. 54-3 at 58 (225:1-15), R. 54-4 at 27-28].

To the extent there is any ambiguity, Pequette's further testimony clarifies the sequence. Pequette explicitly testified he did not hear any gender-based complaints from Vincent until *after* Shade and other PVHS personnel had informed Vincent on June 5 she was not welcome and needed to leave her PVHS keys. [R. 54-1 at 4-5 (¶ 14)].

Most importantly on this point, **Vincent also clearly testified she did not inform Pequette of any gender-based issues until *after* Shade had already informed her on June 5 that she was not to return to PVHS**. [R. 54-3 at 56-57, 59-60, 74 (217:23-221:13, 229:17-231:15, 286:11-287:9)]. This testimony demonstrates agreement that Shade had already informed Vincent of the removal decision prior to Vincent's complaint to Pequette.

The Court must credit Vincent's testimony as to this fact. *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc) (holding that, at summary judgment, "when conflicts arise between the facts evidenced by the parties, [courts] credit the nonmoving party's *version*" and that courts should not "pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record . . . most helpful to the nonmovant"). Fully crediting Vincent's testimony removes this factor as an appropriate pretext consideration.

However, even if Pequette was aware of Vincent's gender-based complaints about PVHS personnel prior to her removal by the school, that does not suggest a discriminatory motivation by ATI. The district court recognized this. "Knowing an individual made a discriminatory comment is not evidence that the person with knowledge later acted with discriminatory intent." [R. 78 at 19 (citing *Llampallas*, 163 F.3d at 1248-49)].

Pequette's post-removal correspondence, is similarly inadequate to establish pretext. This evidence, a June 8 email from Pequette to ATI HR, demonstrates that Pequette thought there were prior issues with Vincent being able to get along with her co-workers.  [R. 65-31 at 2]. Again, nothing about this correspondence, which lacks gender-based commentary, demonstrates a gender-based motivation prompting the removal that had occurred three days prior.

29

Pequette's testimony about how he would handle a hypothetical racially discriminatory request—is similarly unavailing. The incomplete hypothetical posed to Pequette during his deposition regarding a racially discriminatory request by a client is not equivalent to what occurred here. In his deposition, Pequette answered a question about how he would respond if "Principal Turner said to you, I don't want any black trainers at my school." [R. 54-12 at 21 (73:1-3)]. However, there is no evidence Turner ever made a facially discriminatory request to Pequette regarding Vincent's gender. Pequette's additional testimony identified by Vincent—that ATI complies with client requests "if they say this athletic trainer cannot return," [R. 54-12 at 21 (75:9-12)] only demonstrates recognition of a practical reality. If a school effectuates a removal and says an athletic trainer "cannot return," ATI must comply. Nothing about this testimony demonstrates gender-based motivation. Indeed, ATI and Pequette reacted the same way to PVHS's removal of Vincent as it did with PVHS's removal of male Blackmon months earlier. Pequette did not closely examine Turner's reasoning on Blackmon; he complied with the request because the client, PVHS, would not permit Blackmon to return. [R. 54-1 at 4. (¶¶ 9-11)].

Gee's assignment to PVHS is also unavailing. As already noted above, Gee did not replace Vincent. Regardless, Gee's assignment provides no inference of gender discrimination when considered the full context. In spring 2020, there were two ATI athletic trainers assigned to PVHS: one male (Blackmon) and one female

(Vincent).  [R. 54-3 at 47, 77 (180:17-181:11, 181:21-182:5, 300:18-23); R. 54-2 at 3 (¶ 4)]. After Vincent's removal, in summer 2020, there were two ATI athletic trainers assigned to PVHS: one male (Gee) and one female (Cole). [R. 54-2 at 3 (¶ 8), 5-6; R. 54-1 at 7 (¶ 24), 17].

Vincent's final piece of supposed pretext evidence is the removal itself. This is a circular argument. Vincent is essentially arguing the alleged adverse act is itself evidence of motivation for the adverse act. Such an argument does not demonstrate a gender-based motivation.

Vincent's proffered evidence, even if considered in its totality, fails to demonstrate a genuine issue of material fact demonstrating pretext. As discussed above, ATI treated Vincent the exact same way it treated Blackmon, a male. ATI responded in the same manner to Turner's removal of Blackmon as it did to Turner's removal of Vincent. [R. 54-12 at 19 (66:10-20)]. Neither individual returned to PVHS, and ATI offered both transfers to other available area assignments.

For these reasons, Vincent's discriminatory removal claim fails *McDonnell Douglas* scrutiny and, as such, summary judgment was proper as to this claim.

### B.    Vincent Did Not Argue, and Cannot Establish, a Convincing Mosaic of Discrimination for her Discriminatory Removal Claim

While Vincent relied on a "convincing mosaic" theory at the district court to support her discriminatory removal claim, [R. 74 at 35], her brief to this Court contains no such argument. As such, she has abandoned this theory. *APA Excelsior*

*III L.P. v. Premiere Technologies, Inc.*, 476 F.3d 1261, 1270 (11th Cir. 2007) (holding that parties abandon arguments "[b]y not clearing raising [them] in their initial brief").

To the extent this Court does not find that Vincent has abandoned this theory, when clearly she has, she cannot meet the convincing mosaic standard. Under this theory, an employee can survive summary judgment if she "presents 'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" *Smith v. Lockheed-Martin Corp.* 644 F.3d 1321, 1328 (11th Cir. 2011). The evidence argued by Vincent to establish pretext also fails to establish any such convincing mosaic. For the same reasons already addressed, the evidence fails to demonstrate gender motivated ATI when it transferred Vincent away from PVHS pursuant to Turner's directive.

### C.    Vincent Did Not Meet Her Burden in Establishing a Mixed-Motive as to the Discriminatory Removal Claim

#### 1.    *A Mixed Motive Claim Fails on the Merits*

A mixed motive claim requires sufficient evidence to establish both that a defendant took an adverse act, and that gender was a motivating factor for the decision. *Quigg v. Thomas County School District*, 814 F.3d 1227, 1239 (11th Cir. 2016). There is no such evidence here.

Vincent's argument largely centers on claiming the district court erred by not properly considering what motivated PVHS in seeking the removal. This argument is misplaced as it focuses on what motivated *PVHS*, not what motivated *ATI*.

Vincent claims PVHS did not have any material issues with Vincent until PVHS hired Coach Shade. Maybe so. However, that fact does not show gender motivated ATI. Vincent also alleges Coach Shade's supposed desire not to work with a female athletic trainer prompted Turner's removal of Vincent. Again, this argument has nothing to do with what motivated ATI. It certainly does not show gender motivated ATI (and besides summarily concluding gender motivated Shade, it also does not show that gender motivated him, Turner or PVHS).

Besides focusing on what motivated PVHS, Vincent also alleges Blackmon's post-removal compensation as compared to hers shows gender motivated ATI. However, this argument ignores the fact that ATI offered both Blackmon and Vincent all available positions at the time PVHS removed them from the high school. [R. 54-1 at 4 (¶ 10)]; R. 54-3 at 58 (225:1-15), R. 54-4 at 27-28; R. 54-1 at 6 (¶ 21)].

Further, like Blackmon, ATI offered Vincent a position with the same compensation as the pay she received when assigned at PVHS. [R. 54-3 at 58 (225:1-15), R. 54-4 at 27-28; R. 54-1 at 6 (¶ 21)]. However, Vincent declined this open position. It was Vincent's decision to select an available position with lower compensation. [*Id*.].

Vincent's final piece of supposed motivating factor evidence mirrors her pretext argument, on the timing of when Pequette was aware of Vincent's gender-based complaints. As addressed above, ATI's employee Pequette did not know of Vincent's gender-based complaints until after PVHS employee Shade informed Vincent of her removal from PVHS. *See supra* pp. 27-28. Nothing about this timing establishes that gender motivated ATI.

None of Vincent's arguments demonstrate gender motivated ATI regarding any of its employment actions regarding Vincent. As a result, Vincent cannot defeat summary judgment on a mixed motive theory. *See Yelling v. St. Vincent's Health System*, 82 F.4th 1329, 1343 (11th Cir. 2023) (finding a plaintiff did not meet the mixed motive burden at summary judgment because the cited evidence "does not remotely suggest [employer's] decisionmakers . . . considered [protected characteristic] when firing [employee]").

In attempting to sidestep this conclusion, Vincent argues that the district court required proof of animus for Vincent to defeat summary judgment on a mixed motive theory. Examination of the district court's opinion, however, reveals no material analysis of "animus," only a correct application of the standard identified in *Quigg v. Thomas County School District*, 814 F.3d 1227, 1239 (11th Cir. 2016). [*See* R. 78 at 24-27].

### 2.    *The District Court Properly Considered ATI's Argument on a Discriminatory Mixed Motive Theory*

Vincent further alleges ATI cannot defeat a discriminatory removal claim grounded in a mixed motive theory because the district court improperly considered this issue. Vincent asserts that because ATI did not argument against mixed motive in its initial summary judgment brief, it waived any such argument. However, ATI was not on notice that Vincent was pursuing this causal theory. Nowhere in Vincent's amended complaint does she assert a mixed motive theory regarding any claim against ATI. [*See generally* R. 7].

Once Vincent raised the theory for the first time in her summary judgment response, [R. 74 at 34-40], ATI properly addressed it. [R. 77 at 16-17]. Both parties' positions were fully briefed before the district court. As such, contrary to Vincent's argument, this is not a situation where the district court made one party's arguments for it, or where the district court granted summary judgment on grounds where a party did not have the opportunity to be heard. As a result, it was proper for the district court to consider both party's positions and rule upon this issue. *See Lance Toland v. Phoenix Ins. Co.*, 855 F. App'x 474, 482 (11th Cir. 2021) ("[W]hen 'a legal issue has been fully developed[] and the evidentiary record is complete, summary judgment is entirely appropriate *even if no formal notice has been provided*.'") (emphasis in original).

35

None of the authority cited by Vincent supports her proposition that ATI was barred from addressing a causal theory in its reply when it did not have notice of such a theory until the summary judgment response. Nor does Vincent provide any legal authority to rebut the proposition that it was proper for the district court to consider the arguments briefed by both parties.

The district court correctly rejected Vincent's waiver argument, finding defendants "should not be required to brief every potential strawman issue in a motion for summary judgment to avoid waiving arguments against them." [R. 78 at 24]; *cf Robinson v. Alexander City*, No. 3:18-cv-156-ECM, 2021 WL 4134054, at *6 (M.D. Ala. Sept. 10, 2021) (holding a plaintiff employee could not maintain a mixed-motive theory when the employee argued it for the first time in response to the employer's motion). This is especially compelling where, as here, a defendant is not on notice through a pleading or otherwise that a plaintiff is pursuing such a theory.

The substantive shortcomings of Vincent's mixed motive theory mirror those of the other potential avenues for establishing the discriminatory removal claim. No theory asserted by Vincent creates a genuine issue of material fact that gender motivated ATI as to anything it did with respect to Vincent's PVHS removal.

## IV.  EVEN IF CONSTRUING ATI AS THE REMOVAL DECISION MAKER, ATI IS ENTITLED TO SUMMARY JUDGMENT ON VINCENT'S RETALIATORY REMOVAL CLAIM

If ATI could theoretically be held responsible, and thus potentially liable, for PVHS Principal Turner's decision to remove Vincent from PVHS (which it cannot be, *see supra*, pp. 15-18), the retaliation claim based on this alleged adverse action still cannot defeat summary judgment. Each of its failures is highlighted below.

### A.  The Retaliatory Removal Claim Cannot Withstand Burden-Shifting Scrutiny

#### 1.  *Vincent Cannot Make a Prima Facie Case for the Retaliatory Removal Claim*

To establish a *prima facie* case of retaliation, Vincent must establish the following elements: (1) her statutorily protected activity; (2) an adverse employment action; and (3) a causal connection between the two. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993).

The requisite causation standard is a high "but-for" standard. *See University of Texas Southwestern Med. Center v. Nassar*, 570 U.S. 338, 362 (2013) ("[A] [Title VII] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected conduct was a but-for cause of the alleged adverse action by the employer."). Here, Vincent's retaliation claim fails at step three. She cannot establish a causal connection.

Turner's removal decision and its effectuation occurred *before* Vincent complained to ATI of PVHS employee Shade's alleged discriminatory comments.

Indeed, learning of Turner's removal decision is the thing that prompted Vincent to raise the issue with Pequette in the first place. [R. 54-3 at 57, 74 (220:6-221:13, 286:21-287:9)].  By the time Vincent spoke with Pequette, Turner had already made the decision, directed PVHS subordinates to get Vincent's keys, and the coaches had already visited her to retrieve her keys. [R. 54-3 at 56-57 (217:23-221:13)].

"An adverse employment action is deemed to have occurred when the employer made the final decision and communicated it to the employee." *Thomas v. CVS/Pharmacy*, 336 F. App'x 913, 915 (11th Cir. 2009); *see also O'Hara v. University of West Florida*, 750 F. Supp. 2d 1287, 1310 (N.D. Fla. 2010) ("When an employer makes a tentative decision before protected activity occurs, the fact that an employer proceeds . . . is not evidence of causation.").

Both Turner's removal decision and the conveyance of Turner's decision to Vincent occurred before Vincent's alleged protected complaint to Pequette. "[I]f the alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected." *Manley v. DeKalb County, Georgia*, 587 F. App'x 507, 512 (11th. Cir. 2014). This lack of a causal connection means Vincent cannot make a *prima facie* retaliatory removal claim.

To rebut this undisputed fact, Vincent attempts to recast the testimony regarding the timing. In support of this effort, Vincent identifies part of Pequette's testimony conflating the timing of Vincent's "removal" from PVHS with the timing

of his communication with Vincent regarding available reassignment options. *See supra*, pp. 27-28. As established above, Pequette's full testimony clarifies that he did not receive a gender complaint from Vincent until after PVHS's Shade had already informed her of her removal by PVHS. *See id*.

Moreover, Vincent's own testimony is clear that **she did not complain to Pequette until after learning of her removal from PVHS**. [R. 54-3 at 56-57, 59-60, 74 (217:23-221:13, 229:17-231:15, 286:11-287:9)]. To the extent Pequette's testimony conflicts with Vincent's, the Court must credit Vincent. *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (en banc) ("[W]hen conflicts arise between the facts evidenced by the parties, [courts] credit the nonmoving party's *version*").

There is no dispute that the removal decision by PVHS occurred prior to any complaint made by Vincent to Pequette (the alleged protected conduct) and, as a result, no causal connection can be established. As such, Vincent's retaliatory removal claim fails *prima facie* analysis.

### 2.    *The Retaliatory Removal Claim Fails the Subsequent Steps of the Burden Shifting Test*

If Vincent were to establish a *prima facie* retaliatory claim based on removal, though, her claim still fails. The burden-shifting and pretext analysis mirrors that already highlighted in the discrimination context. *Rodriguez v. Secretary, U.S. Dept. of Homeland Sec.*, 518 F. App'x 653, 655-56 (11th Cir. 2013) (holding that the

39

legitimate reason and pretext part of the burden shifting analysis is same in both settings).

Applying that standard, ATI's recognition of Turner's directive was a legitimate non-retaliatory reason for the removal, and nothing about the evidence identified by Vincent demonstrates that the real reason was a retaliatory animus. The burden shifts to Vincent. *Gogel v. Kia Motor Manufacturing of Georgia, Inc.*, 967 F.3d 1121, 1135-36 (11th Cir. 2020) (en banc).

In an effort to meet her pretext burden, Vincent relies largely on (1) the timing of her complaint to Pequette as compared to the adverse removal, (2) Pequette's post-removal discussion of Vincent's ability to work well with others and his belief that ATI had previously-documented issues with Vincent, and (3) ATI's alleged near transfer of Vincent out of PVHS three years earlier. To qualify as adequate pretext, these items must show both that ATI's stated reason was false *and* that protected conduct was a but-for cause of the removal. *Gogel*, 967 F.3d at 1136. In doing so, "it is the plaintiff's burden to provide evidence from which once could reasonably conclude that but for her alleged protected conduct, her employer would not have [taken the adverse act]." *Id*. None of Vincent's evidence carries this burden.

First, as established above, the undisputed evidence in this case establishes that the removal decision by PVHS was made and communicated to Vincent prior

to any alleged protected complaint. As such, this argument by Vincent cannot demonstrate pretext.

In addition, Pequette's post-removal discussion of Vincent's interpersonal relationship skills does not establish retaliatory pretext. Turner's directive, that Vincent was not permitted to return to PVHS, was itself based in part upon Vincent's shortcomings regarding interpersonal communication. This supports Pequette's assessment of Vincent's workplace conduct. Regardless, Pequette's post-removal comments and belief about the prior existence of documented issues for Vincent do not somehow demonstrate that "but for" the complaint made by Vincent to Pequette, Vincent would not have been removed by Turner from PVHS.

Finally, the fact that ATI considered but did not actually transfer Vincent years earlier does not suggest Vincent's later complaint about Shade was somehow the "but for" cause of a removal already effectuated by Turner. First, Vincent's 2017 internal report about mishandling of a student situation did not result in any transfer of Vincent. Further, there is no evidence Pequette, the challenged ATI decision-maker, played any role in "almost" transferring Vincent in 2017. Indeed, counter to being involved in causing the almost-transfer, Vincent met with Pequette in 2017, who informed her he planned to rectify the situation, after which Vincent never transferred. [R. 54-3 at 43-44 (165:20-166:21)].

41

None of Vincent's identified evidence of pretext meets the pretext burden. As a result, even if she could make a *prima facie* case, Vincent cannot survive summary judgment.

## B.    Vincent Cannot Meet the "Convincing Mosaic" Standard for Her Retaliatory Removal Claim

Besides the traditional burden-shifting analysis, employees can survive summary judgment on a retaliation claim by demonstrating a "convincing mosaic" of evidence that creates a reasonable inference of retaliatory intent, sufficient for "a reasonable jury to infer but-for causation." *Yelling v. St. Vincent's Health System*, 82 F.4th 1329, 1342 (11th Cir. 2023). Vincent cannot prevail on such a theory.

### 1.    Vincent Waived Argument on a Convincing Mosaic Retaliatory Assignment Theory

Vincent cannot proceed on a convincing mosaic retaliatory removal theory because she did not raise it to the district court. [*See* R. 74 at 41-46]. *See Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) ("[A]bsent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal.").

### 2.    Vincent's Convincing Mosaic Retaliatory Assignment Claim Fails on its Substance

Vincent's convincing mosaic retaliatory assignment claim fares no better on the merits. Potential convincing mosaic evidence may include, "(1) suspicious timing or ambiguous statements, (2) systematically better treatment of similarly

situated employees, and (3) pretext." *Yelling v. St. Vincent's Health System*, 82 F.4th 1329, 1342 (11th Cir. 2023). Vincent fails to satisfy this standard.

The most basic reason for Vincent's inability to meet the standard is the same timing issue already addressed above. The removal decision was made before the protected conduct, so it could not have caused the removal. [R. 54-3 at 56-57 (217:23-221:13)].

Moving beyond that, the evidence Vincent cites to support her convincing mosaic theory is the same as the evidence she cited in support of her pretext argument which has already been addressed above. In like manner, this evidence is insufficient to establish a convincing mosaic of retaliation. It does not show that "but for" Vincent's complaint, she would not have been removed from PVHS. As such, Vincent's convincing mosaic retaliatory removal claim fails.

Even if ATI were the decision-maker for Vincent's removal from PVHS (which it was not), Vincent cannot prevail under any theory for her retaliatory removal claim. The claim suffers outcome-determinative sequencing issues, and there is no evidence her complaint to Pequette anything ATI did with respect to PVHS's removal of Vincent from working at the school.

## V.   VINCENT'S DISCRIMINATORY AND RETALIATORY ASSIGNMENT CLAIMS LACK AN ADVERSE ACT

### A.   Vincent Waived Argument that the Middle School Assignment Was a Discriminatory Act and Waived All but the Narrowest of Circumstances to Argue it was Retaliatory

Vincent's removal and later reassignment were two different acts made by two different entities. The removal occurred on June 5, when PVHS personnel barred Vincent from returning to work at PVHS. [R. 54-3 at 55 (213:10-214:5)]. The subsequent reassignment to Vincent to another open position occurred between June 11 and June 15, when Vincent selected one of the ATI open positions available to her.  [R. 54-3 at 58 (225:1-15), R. 54-4 at 21, 27-28].

ATI offered Vincent an open position at the high school level with the exact same salary as what Vincent earned while stationed at PVHS. *Supra*, p. 33. Vincent did not select this assignment, though, instead voluntarily choosing a middle school assignment with a corresponding lower rate of pay and its corresponding slightly differing duties. [R. 54-3 at 58 (225:1-15), R. 54-4 at 27-28; R. 54-1 at 6 (¶¶ 21-22); R. 54-1 at 6 (¶22)].

At the district court, ATI argued that the subsequent assignment was not an adverse act for various reasons. [R. 56 at 29-33]. In response, as correctly recognized by the district court, [R. 78 at 26], Vincent did not argue *at all* that the assignment was a discriminatory adverse act. [*See generally* R. 74]. As for the retaliation claim, Vincent argued *only* that the change in her compensation, along with the existence

44

of duties at the position she elected, made her new middle school assignment an adverse act. [R. 74 at 40-41].

As a result, the district court correctly held, first, Vincent waived any argument challenging the assignment as discriminatory since Vincent did not identify an adverse act. [R. 78 at 26]. Second, the district court rightfully held the only part of the assignment Vincent challenged as an adverse act was the reduction in pay and existence of some duties that accompanied the middle school assignment. [R. 78 at 31]. As result, the district court correctly held it could not consider other aspects of the assignment and alternate assignment options (such as an alleged increased commuting time) as an adverse act because Vincent did not raise those arguments before the court. [R. 78 at 31].

Vincent's efforts to now argue she suffered a discriminatory adverse act with respect to the assignment are too late. *Ramirez v. Secretary, U.S. Dept. of Transp.*, 686 F.3d 1239, 1249 (11th Cir. 2012) ("It is well-settled that we will generally refuse to consider arguments raised for the first time on appeal.").

Vincent's failure to argue the assignment was an adverse act in the discrimination context means she cannot do so now. And, similarly, her arguments on the adverse act element on her retaliatory assignment claim are limited to the arguments asserted to the district court (compensation and duties the middle school position).

45

Since Vincent did not meaningfully address ATI's argument that Vincent could not establish a discriminatory adverse act with respect to the assignment, Vincent waived that argument and cannot raise it now. Similarly, Vincent's argument on the retaliatory assignment point is limited to those items raised at the district court: compensation and duties at the middle school position she selected (which are not adverse for reasons highlighted below).

### B. The Post-Removal Assignment Was Not an Adverse Act Under Either the Discrimination or Retaliation Standard

Even if fully considering the issue, Vincent cannot establish the assignment was an adverse act. Title VII disparate treatment analysis only provides relief to employees for *adverse* employment actions. "[T]o be an adverse action in the context of retaliation, the action 'must be harmful to the point it could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Adams v. City of Montgomery*, 569 F. App'x 769, 772 (11th Cir. 2014). The standard is more exacting for employees in the discrimination context. "A plaintiff 'must show a *serious and material* change in the terms, conditions, or privileges of employment' to establish an adverse employment action. The actions must be viewed under the totality of circumstances." *Hyde v. K.B. Home, Inc.*, 355 F. App'x 266, 269 (11th Cir. 2009). Under either the retaliation or discrimination standard, ATI's transfer was not adverse because it was not contrary to Vincent's interest.

Context is important. In the typical case challenging reassignment decisions, an employer is responsible for both the removal from the old position and the assignment to the new position. That is not what happened here. The removal and assignment were different events, one occurring before the other, necessitating the need for the second. PVHS principal Turner made the removal decision, not ATI. *Supra*, pp. 17-18. As a result, ATI was left to decide was what to do with an employee, Vincent, who suddenly no longer had a work assignment with a client. This distinction is important background when analyzing whether ATI's conduct qualifies as adverse. ATI did not decide to move Vincent; it only decided to place her somewhere she was eligible to work. It offered her three available positions, including one at a high school with the same pay rate. *Supra*, p. 33. And while Vincent alleges now that the commute to the newly offered high school position would have increased her commute time, ATI could not manufacture a closer work assignment that was not available.[8] This contextual background for analyzing transfers is important and was recognized as such by the Supreme Court. "[T]he significance of any given act of retaliation will often depend upon the circumstances. *Context matters*." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (emphasis added). "[R]eassignment of job duties is not automatically

---

[8] This issue was waived before the district court and so remains waived now. The district court observed, "[t]he court does not decide whether the increased commute would constitute an adverse action because Ms. Vincent does not make that argument." [R. 78 at 31].

actionable. Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case." *Id*. at 71.

The particular circumstances here demonstrate that ATI did not subject Vincent to a legally cognizable adverse act. The reassignment options offered to Vincent included one that was the same position and included the exact same compensation at another high school doing the same athletic training activities. [R. 54-3 at 58 (225:1-15), R. 54-4 at 27-28; R. 54-1 at 6 (¶ 21)]. *Polite v. Dougherty County School System*, 314 F. App'x 180, 183-84 (11th Cir. 2008) ("The district court committed no error in granting summary judgment on [employee's] retaliation claim because he suffered no adverse employment act. His teaching job after the transfer [to a different school] involved the same responsibilities, and he had the same pay."). The Court held that a change in location was not enough for a transfer-as-adverse-act claim to survive summary judgment.

Further, "transfers that simply increase the distance of the employee's commute do not" qualify as adverse actions, both in the discrimination context *and* in the retaliation context. *See Williams v. Florida Dept. of Corrections*, 2011 WL 1085030, at *5-7 (N.D. Fla. Mar. 22, 2011) ("Plaintiff cannot sustain his claim of retaliation because he failed to establish adverse action taken against him.").

Here, the circumstances demonstrate ATI did not subject Vincent to a materially adverse employment action. ATI offered Vincent an assignment with the

exact same compensation she earned at PVHS. [R. 54-3 at 58 (225:1-15), R. 54-4 at 27-28]. The only meaningful difference between the high school position offered to Vincent and her former post at PVHS was the longer commute. *Polite* demonstrates it is not an adequate basis for finding an adverse act. 314 F. App'x at 183-84.

As to the change in pay and change in duties associated with the middle school position, Vincent's role in voluntarily selecting that assignment means she cannot now claim the assignment was an adverse act. This was the central point of the district court's well-reasoned conclusion: "That [Vincent] took a pay cut and had additional responsibilities at [the] middle school is irrelevant when it was *her choice* to work there." [R. 78 at 31-32] (emphasis added). With no adverse act, any claim challenging the assignment as discriminatory or retaliatory necessarily fails.

## VI. VINCENT'S DISCRIMINATORY ASSIGNMENT CLAIM CANNOT SURVIVE EVEN IF THE ASSIGNMENT IS CONSTRUED AS AN ADVERSE ACT

If the Court were to conclude differently on the threshold issue of the assignment as an adverse act, Vincent still cannot defeat summary judgment with regard to her assignment claim.

Vincent did not attempt to make a *prima facie* case in her brief on this point, instead only arguing the transfer was an adverse act and then moving straight to pretext. [*See* Doc. 25 at 32-35]. Vincent's failure to argue the remaining points of a *prima facie* case means she cannot survive *McDonnell Douglas* scrutiny on her

discriminatory assignment claim. *See APA Excelsior III L.P. v. Premiere Technologies, Inc.*, 476 F.3d 1261, 1270 (11th Cir. 2007) (holding that parties abandon arguments "[b]y not clearing raising [them] in their initial brief").

 If considering the *prima facie* factors nonetheless, besides the adverse act failure, Vincent cannot meet the third element, requiring she identify a similarly situated comparator outside her class who was treated differently. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1227-28 (11th Cir. 2019) (en banc) (requiring a comparator to be "similarly situated in *all* material respects").

Vincent cannot identify a male athletic trainer—barred by a school so as to require reassignment—who Pequette treated any differently. Without a comparator, Vincent's discriminatory assignment claim is inadequate. To the extent Vincent alleges Blackmon qualifies as a comparator, she is wrong. ATI treated Blackmon the same way it treated Vincent. *Supra*, pp. 30-31, 33. Blackmon is not comparator.

If he were, though, and if the burden-shifting analysis were to proceed, ATI met its burden of identifying a non-discriminatory reason for its assignment. ATI could not send Vincent to PVHS, so it gathered all known open area assignments and sent those to Vincent for her to choose from. [R. 54-1 at 5-6 (¶¶ 17-21)]. ATI's reasoning for its assignment and offered rates of pay was not tied to anything related to gender. [R. 54-1 at 6 (¶ 21-22)]. ATI satisfied its legitimate non-discriminatory burden, moving the burden back to Vincent to show pretext.

Pretext, again, presents a hurdle too high for Vincent. She cannot show any weaknesses in ATI's reasoning *or* that gender actually motivated the assignment decision. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515-16 (1993) (holding that a successful pretext argument requires both that the reason is false and that discrimination is the real reason).

In an effort to show pretext, Vincent alleges multiple items: (1) alleged availability of other transfer destinations, (2) the pay rate associated with middle school positions, (3) Blackmon's earlier transfer, and (4) Pequette's alleged attitude and comments on moving forward when Vincent had a discussion with Pequette after she had already selected the middle school position. ATI will address each in order.

First, there is no evidence there were any other positions available *as of the date* the transfer positions were offered to Vincent. [R. 54-1 at 5-6 (¶¶ 17-20)]. The fact other positions may have been available at some other time establishes nothing. Second, as to compensation at middle schools: middle schools are different from high schools. ATI distinguishes between the two when assigning compensation. [R. 54-1 at 6 (¶ 22)]. The fact that it does so is not evidence of discrimination, and there is no suggestion that ATI's business practice in doing so was somehow aimed at discriminating against Vincent. This is especially true when considering ATI offered Vincent a high school position with the same pay rate. [R. 54-3 at 58 (225:1-15), R.

54-4 at 27-28; R. 54-1 at 6 (¶ 21)]. ATI's compensation practices related to middle school assignments have no bearing on prextext analysis.

Third, as to ATI's treatment of Blackmon, ATI already established, *supra*, pp. 30-31, 33, it treated Vincent and Blackmon the same with respect to transfers after PVHS removed each from PVHS. Nothing related to Blackmon shows pretext as to Vincent's assignment.

Fourth, Vincent identifies Pequette's alleged comments in a post-assignment phone call as evidence of pretext for the earlier assignment. They are not. Pequette's supposed statements that he thought it made sense to move forward and that avoiding anger would be helpful in Vincent's new role hardly demonstrate the assignment itself was motivated by gender. Nor do those comments otherwise cast doubt on ATI's explanation for offering the positions that were available to be filled.

Even if Vincent had established a *prima facie* case, Vincent cannot show pretext as to her discriminatory assignment claim. As a result, the Court should affirm the district court's grant of summary judgment.[9]

---

[9] Vincent's brief does not appear to allege her assignment was discriminatory under either a "convincing mosaic" or "motivating factor" theory. As a result, she abandoned those theories. Nonetheless, there is no genuine issue of material fact if considering either of these theories.

## VII.  VINCENT'S RETALIATORY ASSIGNMENT CLAIM CANNOT SURVIVE EVEN IF THE ASSIGNMENT IS CONSTRUED AS AN ADVERSE ACT

### A.    The Retaliatory Assignment Claim Fails Burden-Shifting Analysis

ATI's assignment decision was not retaliatory even if analyzed beyond its already-identified adverse action shortcoming. Under the applicable burden-shifting analysis, ATI has established a non-retaliatory reason for its assignment; it is the same reason noted above in the discrimination assignment context. In the face of PVHS's removal decision, ATI's only choice was to either terminate Vincent or offer her the option to be reassigned to a vacant athletic trainer position. [R. 54-1 at 5-6 (¶ 19)]. ATI allowed Vincent to choose between the available open positions and corresponding rates of pay. [R. 54-3 at 58 (225:1-15), R. 54-4 at 27-28; R. 54-1 at 5-6 (¶¶ 17-20)]. ATI's reasoning for its assignment decision was legitimate and non-retaliatory.

The pretext analysis here is the exact same as in the assignment discrimination setting already argued and Vincent cannot demonstrate the assignment reasoning was both false and retaliatory.  ATI treated Vincent the same as it treated Blackmon, Vincent's male peer, who had not engaged in protected activity. It offered them both the available open assignments and let them pick their next assignment.

Vincent's purported pretext evidence on the retaliatory assignment issue mirrors her purported pretext evidence on the retaliatory removal claim. [Doc. 25 at

54-56]. ATI will not outline the exact same argument on those points here, but incorporates them by reference, *supra*, pp. 39-41.

While there is close temporal proximity between the June 5 complaint and the June 11 assignment, temporal proximity alone cannot establish pretext. *See Gogel*, 967 F.3d at 1137 n.15 ("[T]emporal proximity alone is insufficient" to establish pretext.). More than that, analysis of other key ongoing events at the time undermines the value of close temporal proximity in this case. Vincent complained on June 5 because of her removal from PVHS by Turner. Of course, her reassignment by ATI occurred close in time to the removal, and thus close in time with her complaint. Recognizing this demonstrates that the close temporal proximity provides no inference of retaliation.

None of Vincent's identified evidence of pretext meets the burden. As a result, even if she could make a *prima facie* case, Vincent's retaliatory assignment claim cannot survive summary judgment.

### B.    Vincent Cannot Make a Retaliatory Assignment "Convincing Mosaic" Claim

#### 1.    *Vincent Waived Argument that Her Assignment was Retaliatory Under a "Convincing Mosaic" Theory*

Vincent's brief includes an argument her assignment was retaliatory under a "convincing mosaic" theory. [Doc. 25 at 49-56]. Vincent alleges the district court erred "by taking an inflexible and formulaic *McDonnell Douglas* approach when

analyzing Vincent's retaliation claim." [Doc. 25 at 50]. But Vincent did not make any argument to the district court on her retaliation claim *other than McDonnell Douglas* burden-shifting analysis. [*See* R. 74 at 43-46]. Since she did not raise a "convincing mosaic" retaliation theory at the district court, she cannot do so now.

### 2. *Vincent's Retaliatory Assignment Claim Cannot Withstand Scrutiny on the Merits under a Convincing Mosaic Theory*

Vincent's retaliatory assignment claim relying on a "convincing mosaic" theory is inadequate substantively. Potential convincing mosaic evidence could take several forms. It may include, "(1) suspicious timing or ambiguous statements, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Yelling v. St. Vincent's Health System*, 82 F.4th 1329, 1342 (11th Cir. 2023).

In an effort to meet the "convincing mosaic" standard, Vincent identifies many of the same items she identified as pretext evidence in the *McDonnell Douglas* context. [Doc. 25 at 53-54]. They include temporal proximity between the complaint and assignment, the justification for the earlier removal, ATI's response to her complaint regarding Shade, advising her of the open positions, and offering her severance. [*Id*.].

Other than the severance offer, all of these items overlap with items already addressed in the pretext analysis. *See supra*, pp. 30-31, 33. Just as those items of evidence do not show pretext, they do not demonstrate that ATI's assignment conduct would not have occurred "but for" Vincent's June 5 complaint. As to the

severance offer specifically, Vincent does not argue how offering severance when an employee announces their resignation shows a retaliatory animus for an earlier act. Nor does Vincent identify anything about the alleged severance other than to say one was offered. Like Vincent's other arguments, this fact fails to establish pretext.

## CONCLUSION

ATI did not control Vincent's removal from PVHS, so it cannot be liable for it. ATI did not subject Vincent to an adverse act when it offered her new assignments after her removal, so there is no genuine issue of material fact as to any version of the Title VII assignment claims. Even if these fatal deficiencies did not exist, Vincent cannot establish various other aspects of the removal and assignment claims, mandating summary judgment. These substantive conclusions in favor of affirmation are further supported by procedural flaws. Vincent's Amended Brief includes inadequate briefing issues, and it also includes various arguments she waived and/or abandoned by not first raising them at the district court.

For all these reasons, as well as those others identified above, ATI respectfully requests that this Court **AFFIRM** the district court's Order granting summary judgment in its favor and award such other and further relief as the Court deems just and proper.

s/ Janell M. Ahnert
Janell M. Ahnert
Patrick D. Schach

Attorneys for Defendant-Appellee
ATI Holdings, LLC

**OF COUNSEL:**
**LITTLER MENDELSON P.C.**
Shipt Tower, Suite 2300
420 20th Street North
Birmingham, AL  35203-3204
Telephone: 205.421.4700

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that this brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B), excluding the parts of the document exempted by Fed. R. App. P. 32(f), and the total word count, as determined by the word processing system used, is 12,906 words.

Counsel further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)


s/ Janell M. Ahnert
OF COUNSEL

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2023 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via CM/ECF.

| | |
|---|---|
| Cynthia Forman Wilkinson<br>WILKINSON LAW FIRM, PC<br>1717 3rd Avenue North, Suite A<br>Birmingham, AL 35203<br>Wilkinsonfile@wilkinsonfirm.net<br><br>Samantha Smith<br>Carl Johnson<br>Bishop, Colvin, Johnson & Kent LLC<br>1910 1st Ave. N.<br>Birmingham, AL 35203<br>sksmith@bishopcolvin.com<br>carljohnson@bishopcolvin.com | Mark Boardman<br>Clay Carr<br>Kate Watkins<br>Boardman, Carr, Petelos,<br>Watkins, & Ogle P.C.<br>400 Boardman Drive<br>Chelsea, AL 35043<br>mboardman@boardmancarr.com<br>ccarr@boardmancarr.com<br>khortberg@boardmancarr.com<br><br>Richard A. Bearden<br>MASSEY, STOTSER, & Nichols, P.C.<br>1780 Gadsden Highway<br>Birmingham, AL 35235<br>RBearden@msnattorneys.com |

s/ Janell M. Ahnert

OF COUNSEL